ELIZABETH MITCHELL, Administratrix, Appellant, v. DES MOINES COAL COMPANY, Appellee.

**MASTER AND SERVANT:** Workmen's Compensation Act—Rejection of Act—Presumption of Master's Negligence—Force and Effect. In an action by a servant for damages for an injury "arising out of and in the course of his employment," against a master who has rejected the provisions of the Workmen's Compensation Act, the law comes to the aid of the servant, and rebuttably presumes, with the force of substantive evidence, that the master has been proximately negligent. (Sec. 2477-m, Code Supp., 1913.)

**MASTER AND SERVANT:** Workmen's Compensation Act—Master's Duty to Negative All Proximate Negligence. A master who has elected to reject the provisions of the Workmen's Compensation Act must, in an action by his servant for an injury "arising out of and in the course of his employment," negative *every* fact which would justify a finding of proximate negligence on his (the master's) part. Evidence attending the death of a miner in a haulage way of unlawful width reviewed, and held not sufficient to show, as a matter of law, that the master had met the above burden.

*Appeal from Polk District Court.*—W. M. McHENRY, Judge.

NOVEMBER 16, 1917.

REHEARING DENIED FEBRUARY 15, 1918.

ACTION to recover damages for the death of deceased in defendant's mine. Trial to a jury, and a directed verdict for the defendant. Plaintiff appeals.—*Reversed.*

*John T. Clarkson,* for appellant.

*Stipp, Perry, Bannister & Starzinger,* for appellee.

1. MASTER AND SERVANT: Workmen's Compensation Act: rejection of act.: presumption of master's negligence: force and effect.

PRESTON, J.—Plaintiff alleged that she was the administratrix, and the defendant, a corporation operating a coal mine in Polk County, Iowa; that deceased was an employee in defendant's mine, and, while performing the work of driving a mule temporarily in defendant's mine, he sustained an injury which caused his death; and that the injury arose out of and in the course of his employment; and that defendant had given notice rejecting the provisions of the Workmen's Compensation Law. These allegations are admitted in the answer, but it is denied that defendant was guilty of any negligence which proximately caused the injury, and the answer alleges that defendant was in the exercise of due care for the safety of appellant's intestate, and that the injury was not caused by the breach of any duty owing by it to deceased.

One of the questions presented is in regard to the force of the presumption under Code Supplement, 1913, Section 2477-m, Paragraph 4 (d). We have decided this point in *Mitchell v. Phillips Mining Co.,* 181 Iowa 600, and adversely to appellee's claim. It is unnecessary to discuss that feature of this case further. It is claimed here by appellee, as it was in the other case, that the purpose of the statute was simply to shift the burden of proof to the defendant, and that the evidence introduced on the trial was such as to overcome any presumption of negligence, and that this is so as a matter of law. But we are of opinion that there are facts shown in this record proper to be considered by the jury, not only in aid of the presumption, but as making a ques-

tion for the jury as to whether the evidence introduced was sufficient to overcome the presumption.

Three or four matters are urged by appellant which she says were in violation of defendant's duty to furnish plaintiff a safe place to work and safe appliances, which may have been the cause of the injury to deceased. Appellee contends that it is not shown that these matters were the cause thereof, and they say that it is not shown that any of these matters had anything to do with the injury. It is not a question whether plaintiff has shown that they were the cause of the injury, but rather, whether defendant has shown that they were not the cause thereof, and whether defendant has overcome the presumption raised by the statute. Under the record, we think this was a question for the jury. It may be, as contended by appellee, that defendant is not required to prove exactly how the accident happened, or to furnish a satisfactory explanation of it, but it is sufficient if it proves that the accident did not result from negligence on its part. But it was incumbent upon defendant to overcome the presumption of negligence by negativing every fact which would justify a finding of negligence on its part. *Stewart v. Iowa Cent. R. Co.*, 136 Iowa 182.

The evidence must be construed in the light most favorable to plaintiff. We shall attempt to state the different propositions and the evidence in regard thereto, without going too much into detail. There is a conflict at some points, but the jury could have found therefrom that, prior to his death, deceased was employed by defendant as a coal miner, and that, at the time of the injury, he was temporarily employed as a driver; that, a few days prior to the injury, defendant's mine foreman told deceased that he could drive a mule for a few days temporarily, rather than to lie idle waiting for a place; and that this was agreed to by the

deceased.   Deceased hauled coal down the first north hill
to the parting.   This first north entry ran north, and de-
ceased had been working driving a mule in this entry on
the day previous to his death.   In this entry there was about
a one per cent grade, at or near the bottom of the hill. .As
the entry extended northward, the grade increased.. The
entry was one used as a haulage way, in which deceased per-
formed his work.   In his work, deceased caused the empty
cars to be pulled along the north entry, where he would ex-
change empties for a trip of loaded cars, and then would
cause the loaded cars to be pulled to the parting, where he
obtained empty cars.   In making the trip with the loads, it
was necessary to go down hill.   There were two loaded
cars.   In going out with the loaded cars, it was necessary
to put four sprags in the wheels on one side, which had the
effect of spragging, or braking, the wheels on both sides of
the cars; these sprags of wood were 14 or 15 inches long,
and the cars were spragged by placing the wood between the
spokes of the wheel, and as the wheel turned, it brought the
wood against the bottom of the car, thereby preventing the
wheels from revolving.   When the loads arrived at the bot-
tom of the hill, he would remove three of the sprags, and
continue to the parting with one sprag in the wheel; the
sprags were usually removed by the driver at a point about
7 or 8 feet north of where the body of deceased was found,
at the time of the injury.   At the place where the body
of deceased was found, the haulage way was approximately
4½ feet wide, from the rib, or the side, of the entry to a
ledge, or the other side of the entry, and at the place where
the sprags were usually taken out, the entry was about 7
feet wide.   The rib of the haulage way on the east side of
the track was close to the car, and on the west side, about
15 or 16 inches between a post, placed as support for the
roof, and the track; between the flange of the wheel and the
rib on the east side it was about 11 inches; and on the west,

about 15 or 16 inches, or about 5 feet 3 inches from one rib
or side of the entry to the other rib. Originally, the entry
was constructed 12 feet in width; but at the point in ques-
tion, portions of the bottom had been taken up, and props
had been set along the side of the ledge, leaving a space for
the roadway of about 5 feet and 4 to 6 inches in width. Of
the material taken up from the bottom, a wall had been
built along the roadway, which left about 5½ feet for the
roadway. The haulage way where deceased was performing
the work was about 5½ feet in width, all along the entry
at the place where the body was found, and for some con-
siderable distance north.

There was no eyewitness to the accident. One Tom
Winders, defendant's mine foreman, was not far away, sit-
ting across the main track. He testifies:

"When deceased came back down, he hollered, 'Look
out, Tom,' and I looked up from my book, and the light was
about the proper place it would be when the man is standing
on the chain, and right then the light [of deceased] went
out, and the car stopped, and the mule was 6 or 7 feet
ahead of that. The mule was ahead of the car; the mule
was between him and me. When he cried, 'Look out, Tom,'
I ran straight to him. I couldn't tell whether the car moved
in the track, but the car stopped rumbling as soon as I
looked. Mr. Kelley was in front of the car, lying with
his face to the north; he was lying on the right side; his
feet and limbs under the car, his two feet across the rail,
up close to the west rail, and his head against the flange,
with the flange of the wheel cut in the skull,—the east side
front wheel,—the flange of the wheel was inside the cut, and
the top of his head was off."

The body was located 7 or 8 feet south of the point
where the sprags were usually taken out of the wheel. The
east rail of the track was close to the rib, going north.
When Winders came up, the tail chain was unhooked from

the car. At the place where the body was found, blood was spattered on the rib near the bottom, immediately east of the east rail. The blood that was spattered on the side was about half way up on the wheel: that is, up on the side about the height of the wheel. About 30 to 40 feet north of where the body was found, there was a projection in the roof, which projected some 6 or 8 inches.

Soon after this, an examination was made, and it was found that there were only three sprags in the car; one of the sprags had come out, and was picked up on the hill back of where the accident occurred, 500 or 600 feet north of where the body was found, and about 100 feet below the top of the hill. There is some contention as to whether the sprag that came out went on through the wheel, or whether it fell out from the side on which it was placed.

In performing his work of driving, deceased would ride on the tail chain: that is, one foot located on the chain, and the other foot on the front end of the car, one hand on the car, and the other resting on the rump of the mule. When deceased was found, the cars were not off the track, nor were they separated the full length of the coupling,—not jammed together—a little opening between,—indicating, according to the testimony, that the cars were not going fast. Winders says that, as soon as deceased "hollered," his light went out, and the car stopped. It is the habit of a mule to stop when the driver's light goes out. There is evidence that, when the driver falls or leaves the car, or takes his foot off the tail chain, the hook is likely to become unhooked. There was one link and hook on this drawbar; the drawbar extended out from the front end of the car about three inches; and on the end of that is where the link was fastened on the drawbar. Some of the drivers put the hook of the tail chain into the link, and others in the hole in the drawbar. It is not shown which of these methods was used at the time deceased was hurt. The tail chains

become smooth from use, and a man's foot may slip off them. The drawbar is a flat bar, about 3 inches by 2½ inches, with a hole in it for the tail chain hook. Two of the boards in the floor of the car project forward about 4 inches beyond the end of the car, forming a bumper, which is above the drawbar. The law requires that the entry, or haulage way, shall be eight feet in width; and it is contended by appellant that, because this one was less than six feet in width, the defendant was not free from negligence in this respect, and that defendant did not show, as against the presumption, that the place furnished deceased was a reasonably safe place in which to do his work. Appellee contends that this had nothing to do with causing the injury to deceased. But the burden was on the defendant to show that it did not have anything to do with the injury.

It should have been said that, at the bottom of the grade, was the mouth of an abandoned room, where the driver ordinarily stepped off his loaded cars to remove the sprags, the mouth of the old room affording him space for that purpose. Immediately beyond this old room, and at the corner thereof, going upward, on the same side of the haulage way, is where the track was located, close to the rib. Defendant's witnesses say that one could not pass between the loaded cars and the rib without being required to edge through. Ordinarily, deceased would expect to stop his loads at the old room mouth, but in the instant case, he did not stop at that point, but went on past to the narrower place. He had come down a steep grade; there was blood up on the side of the rib. As said, there was a roll, or uneven place, in the roof, under which deceased had passed; from the position in which deceased was riding on the tail chain and down the grade, he may have struck his head against the uneven place in the roof, and lost his balance, and struck his head against the rib close to the car. Under the record, it could have so happened. Negligence

is presumed. The burden is not upon plaintiff to show that it did occur in this way, and we are not required to conjecture that it did. As said, it could have so happened, and the burden is upon the defendant to show that it did not so happen: that is, to negative every fact which would justify a finding of negligence. We think it was for the jury to say whether or not the narrow entry, under all the circumstances, did not have to do with the injury of deceased and his death. We have gone into this matter, perhaps, more in detail than necessary, and yet all the circumstances have not been covered; but, from an examination of the record, we are satisfied that the case should have gone to the jury on this proposition, and perhaps on one or two others.

Another circumstance relied upon by appellant is that defendant supplied deceased with dangerous instrumentalities, in the way of loose links where the tail chain was required to be placed in hauling the cars, and that deceased may have been injured by reason thereof. True, it is not shown by the record just what method deceased was employing in regard to this, but, without going into the evidence, we think this was a matter proper to be considered by the jury. We must keep in mind all the time that the burden is on the defendant to show due care.

Without discussing the evidence and claims more in detail, it is our conclusion, from the entire record, that the court erred in directing a verdict for the defendant. The judgment is, therefore, reversed, and the cause remanded for further proceedings in harmony with this opinion.— *Reversed.*

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.