ELIZABETH MITCHELL, Administratrix, Appellant, v. PHILLIPS MINING COMPANY, Appellee.

MASTER AND SERVANT: Workmen's Compensation Act—Rejec-
1   tion of Act—Presumption of Master's Negligence—Force and Effect. The declaration of the Workmen's Compensation Act that a master who has elected to reject the provisions of the act shall be presumed to have been proximately negligent in

case the servant is injured, has the force and effect of substantive evidence, and makes a prima-facie case for the servant on the question of the master's negligence—a case which is not, *as a matter of law*, overcome by any amount of evidence of care on the part of the master, except, perhaps, in cases revealing a quite exceptional state of facts.   (Sec. 2477-m, Code Supp., 1913.)

NEGLIGENCE:   Acts Constituting—Mines and Mining—Failure to
2   Timber Roof or Take Down Same.   Failure to timber the roof of a known dangerous haulageway, or to take down known . dangerous portions thereof, may amply justify the jury in finding negligence on the part of the master.

MASTER AND SERANT:   Place of Work—Mines and Mining—
3   Shifting Duty.   In the progress of mining, that which today may constitute the miner's place of work, with consequent duty on his part to prop and timber, may tomorrow constitute a haulageway, with consequent duty on the master to prop and timber.

EVIDENCE:   Custom—Mines and Mining—Propping and Timber-
4   ing Roof.   Evidence is admissible to show that the master's failure to prop and timber the roof of a mine was contrary to the custom prevailing in the mine.

*Appeal from Monroe District Court.*—SENECA CORNELL, Judge.

NOVEMBER 16, 1917.

ACTION to recover damages for the death of intestate, which resulted from a fall of slate in defendant's mine. Trial to a jury, and at the close of all the testimony, the trial court sustained defendant's motion for a directed verdict.   Plaintiff appeals.—*Reversed.*

*John T. Clarkson,* for appellant.

*F. G. Orelup, F. D. Everett* and *J. C. Mabry,* for appellee.

PRESTON, J.—It is alleged in the peti-

1. MASTER AND SERVANT: Workmen's Compensation Act: rejection of act: presumption of master's negligence: force and effect.

tion that plaintiff's intestate was an employee of the defendant as a coal miner, and, while in the performance of his work in the mine, he sustained an injury by a fall of slate, causing injuries which resulted in his death; that the defendant company had, prior to the injury, rejected the terms of the Iowa Workmen's Compensation Law. The answer alleges that the injuries sustained by deceased were not caused by any negligence or fault on the part of defendant, and that there was no negligence on its part which was the proximate cause of the injury.

Plaintiff introduced evidence to sustain the allegations of her petition, but did not, in the first instance, attempt to show negligence of the defendant, and in proving the allegations of her petition, no additional facts were developed tending to show that defendant was negligent, nor that it was free from negligence. Plaintiff relied upon the presumption arising from the injury, as provided in the Workmen's Compensation Act. Had the case stopped there, plaintiff would have been entitled to a verdict at the hands of the jury. Thereupon, the defendant assumed the burden, and introduced its testimony, tending to show—and, as it claims, it did show—that defendant was not guilty of negligence. Plaintiff then introduced evidence in rebuttal, tending to show, as she claims, that defendant was negligent; and defendant introduced surrebuttal evidence.

The case is presented in this court by plaintiff, appellant, on two theories: First, that the fact of plaintiff's intestate's having sustained an injury arising out of and in the course of his employment, aided by the presumption, which counsel contends has the force of evidence, established the fact of negligence, and that evidence introduced by the defendant tending to show that it was free from negligence

would raise a conflict in the evidence, and that it was a question for the jury to determine whether the evidence introduced by the defendant was sufficient to overcome the presumption; and second, that there was evidence, aside from the presumption, tending to show negligence on the part of defendant, and therefore the case should have been submitted to the jury for a determination of the disputed facts.

1.   As to the presumption.   The statute (Section 2477-m, Paragraph 4, Code Supplement, 1913,) provides:

"In actions by an employee against an employer for personal injury sustained arising out of and in the course of the employment where the employer has elected to reject the provisions of this act, it shall be presumed that the injury to the employee was the direct result and growing out of the negligence of the employer; and that such negligence was the proximate cause of the injury; and in such cases the burden of proof shall rest upon the employer to rebut the presumption of negligence."

One of the questions presented involves the construction of the statute before quoted, and a determination of the office and force of such presumption.   Appellee's contention is, substantially, that the office or function of the presumption in question is to fix the burden of proof, and determine the order in which the evidence shall be introduced; that all the statute does is to cast upon the defendant the burden of affirmatively showing that it was not guilty of any negligence which was the proximate cause of the injury, and that here the statutory presumption ends; that at the most it raises only an inference.   It is said by appellant that almost countless presumptions are met with throughout the domain of jurisprudence; that some are so strong as to be conclusive and cannot be rebutted, others so slight as to disappear in the presence of the truth established against them, and between these two extremes are many others of varying de-

grees of strength and weakness; that the countless defini-
tions and the many divisions of presumptions which have
been formulated afford but little aid in determining the
character, the strength or office of a presumption in legal
procedure.    In Jones' Commentaries on Evidence, Vol. 1,
Sec. 9, we find this language:

"When we set out to define a word like 'presumption,' as
used in the law of evidence, we are weighted with the respon-
sibility not only of furnishing kaleidoscopic definitions of the
term so frequently used, but also by the knowledge that the
word so used is frequently the wrong word.    Presumption,
assumption and inference are indiscriminately made use
of.    To attempt to coin a new word would be to throw out
of gear the machinery of a host of text-books and a myriad
of judicial decisions."

In the same work and volume, Sec. 9a, the author states
that "there seems no excuse for regarding presumption and
inference as synonymous," and "the difference is that a pre-
sumption is a mandatory deduction, while an inference is
a permissible deduction which the reason of the jury makes
without an express direction of law to that effect."    And
in the same connection, to illustrate this distinction, re-
ferring to a certain presumption, he quotes from a court
decision as follows:

"The presumption has a technical force or weight, and
the jury, in the absence of sufficient proof to overcome it,
should find according to the presumption; but, in the case
of a mere inference, there is no technical force attached to
it."

The author, in the same volume, Sec. 9c *et seq.*, gives
a classification of the different presumptions.    Some of the
cases state it thus:    That evidential presumptions rest on
rules making a known set of facts the legal equivalent of
an unknown fact, in the absence of evidence to the contrary;
that this is their primary effect, but that incidentally they

cast the burden of adducing evidence in rebuttal on the party against whom they operate, requiring him to go forward with the trial, and if he fails to do this, then the presumption stands for absolute proof; and that non-evidential presumptions may be regarded as making a prima-facie case as to the fact assumed, thus casting on the opposite party the burden of adducing evidence to the contrary. They do this, not by virtue of a rule of law making certain facts of which evidence has been adduced the equivalent of the fact assumed, as is the case with evidential presumptions, but by virtue of their influence as rules of positive law on trial procedure. Their effect in this respect is, however, the same as that of evidential presumptions. They stand for proof of the fact assumed, but only until contradicted; and, when evidence in rebuttal is adduced, the presumption is dispelled, the prima-facie case disappears, and all the evidence as to the fact formerly assumed is to be considered as a whole, and the jury is to find according to the truth.

Appellee cites Lawson on Presumptive Evidence, pp. 659, 661, Rules 119, 120, in regard to presumptions whose office is to fix the burden of proof, and that such presumption disappears in the presence of positive, uncontradicted testimony on the same subject, which shows that the presumption as applied to the state of facts appearing in evidence would be untrue. Also *Befay v. Wheeler*, (Wis.) 53 N. W. 1121, 1123; 16 Cyc. 1087, Par. D; *Seaboard Air Line R. Co. v. Thompson*, (Fla.) 21 Am. Neg. Rep. 62; Elliott on Evidence, Secs. 91, 92 and 93; Wigmore on Evidence, Secs. 2490 and 2491; and other cases. Also *Baker v. Chicago, R. I. & Pac. R. Co.*, 95 Iowa 163, 171; *Crawford v. Chicago G. W. R. Co.*, 109 Iowa 433; *Ames v. Waterloo & C. F. R. T. Co.*, 120 Iowa 640, 646.

The last three cases were railway crossing cases. The presumptions referred to are in regard to contributory

negligence, and, because of the instinct of self-preservation, the presumption is indulged that the party was in the exercise of due care for his own safety. But this is an entirely different proposition. The presumption arises because of the instinct of self-preservation, and arises only where there are no eyewitnesses. If there are eyewitnesses, the presumption does not obtain at all. The holdings are that the presumption is not conclusive, but rebuttable, and the evidence may be so clear and strong as to be indisputable, or the physical facts may be such that the court can say, as a matter of law, that the presumption has been overcome. This is so, too, in some cases where there is evidence on both sides, and, under the doctrine of the case of *Meyer & Bros. v. Houck*, 85 Iowa 319, and later cases, if the evidence is so overwhelming on one side, or so slight on the other, that the court would not permit a verdict to stand, then a verdict may be directed. And there may be exceptional cases where there is only the presumption on one side, instead of evidence, where the same rule would apply. It is true, of course, as appellee contends, that there are some presumptions the office of which is to fix the burden of proof and determine which party shall first go forward with the testimony, but we shall see later that the presumption in question has more force than that. If that was the intention of the legislature, it would only have been necessary to provide, as the later clause in the statute does, that the burden of proof is upon the defendant. But there is an additional clause preceding that, providing that it shall be presumed that the injury was the result of the negligence of the employer. Appellant argues that appellee's contention is illogical, for that, if the provision as to the presumption of negligence in the statute means no more than shifting the burden of proof, then the latter part of the statute would be simply rebutting that presumption; that is, that, accord-

ing to appellee's contention, the employer is required only to rebut the burden of proof.

The purpose of the Compensation Acts, as stated in some of the authorities, is, substantially, that they form a legislative response to a public demand that a system be afforded whereby employers and employed might escape the evils of personal injury litigation, and whereby employees not guilty of wilful misconduct or intoxication might receive at once reasonable compensation for injuries received in their employment, and on the theory that the more hazardous industries should be made to bear the financial losses sustained by the workmen engaged therein through personal injuries. The legislature, in passing the Iowa law, did not make it compulsory, but rather an elective plan. Before the passage of the law, an injured workman had the burden of proving negligence. In many instances, this was difficult or impossible. Ordinarily, the facts and conditions were within the knowledge of the employer, unless it was in the employee's working place. Under the act, the employer was given the right to elect whether he would reject the compensatory features of the law, and in that case he was deprived of the benefit of certain common-law defenses. In addition to this, a radical change was made with reference to the matter of evidence, and the injured party need do no more than prove the injury in the discharge of his duties, to make out a prima-facie case, and the act itself not only places the burden of proof upon the defendant, but provides, in addition, that the employer shall be presumed negligent. It would seem quite clear that the legislature did not intend that an employer who rejected the provisions of the act should be given an advantage thereby, over employers who accepted the provisions of the act. It is a reasonable inference that the legislature intended that the employer rejecting should pay damages, and that it should be reasonably certain that the employee could collect them,

unless through his own wilful act or intoxication, and that
the provisions of the act should be an inducement to in-
fluence the employer to remain under the law and pay com-
pensation in accordance with its terms.   The act, and par-
ticularly the section now in question, should be construed
so as to carry out the purposes and objects of the act.   This
being so, there is little room for doubt that the legislature
intended that the evidence of the injury should be considered
as evidence of negligence, and to prove the fact of negligence
by operation of the presumption.   The presumption is re-
buttable, and the defendant may show by evidence that it
was not guilty of negligence, or that the negligence was not
the proximate cause of the injury.   We shall see later that
it is a question for the jury to say whether the presumption
has been overcome.   Ordinarily, this will be so, but there
may be exceptional cases where the rule in *Meyer & Bros. v.
Houck,* supra, will apply.   In other words, the strength of
the presumption will depend somewhat upon the facts of
each case.   As said, the evidence for defendant might be so
convincing or indisputable as to show the defendant free
from negligence, or that plaintiff was guilty of wilful mis-
conduct or intoxication, or that, considering the presumption
for plaintiff as evidence, a verdict ought not to stand.   Or the
physical facts might be such as to preclude a recovery.
Or it might be possible in some cases that, in proving the
accident, additional facts might appear which would exon-
erate the defendant.   But such is not the case here, as we
shall see when, later in the opinion, the evidence is re-
ferred to.

Plaintiff likens the statute in question to the fire statute
and our decisions thereunder, and we are of opinion that
such decisions are in point.   Appellee contends that the fire
statute is not applicable, because that statute creates a
liability from the setting of the fire, and there is nothing said
in the statute about any presumption.   But the liability un-

.der the fire statute is not absolute, as contended by appellee; for we have held that the railway company may show that its engines were in proper condition and properly operated, etc., and therefore that it was not guilty of negligence. And, though that statute does not use the word presumption, we have held that there is a presumption of negligence arising from the setting of the fire. Appellant cites *Stewart v. Iowa Central R. Co.*, 136 Iowa 182, 185. In that case it was shown that, under an earlier case, it was held that the effect of the statute was simply to change the burden of proof; but a rehearing was granted in that case, and on rehearing it was said:

"Under the statute, and the decisions of the court, the occurrence of the fire is prima-facie evidence of defendant's negligence. The fire itself is evidence of negligence. It is, however, only prima-facie evidence. But it establishes negligence, which must be regarded as a fact until contradictory evidence requires a different conclusion. There must of necessity be conflicting evidence in the case. The fire, under the law, is evidence of defendant's negligence; the good condition of the engine, the diligence of defendant's employees, and other facts, are evidence of defendant's care. Here is conflicting evidence which must be determined by the jury."

Quoting from another case, it was said in the *Stewart* case:

"Under the rule existing in this state, the mere happening of the fire not only shifts the burden of proof to defendant to show freedom from negligence, but stands as substantive evidence of neglect on the part of the company operating the train."

And the *Stewart* case approved the rule laid down in the prior cases, and said further:

"Considering that evidence of negligence is still necessary to a recovery, the unmistakable genius of the rule is
VOL. 181 IA.—39

that the presumption arising from proof of the fire shall be given the effect of affirmative evidence, establishing *prima facie* the fact of negligence. If the defendant shall elect not to introduce any evidence, the presumption is to have the force of proof, affording warrant for the passing of judgment. If the defendant shall elect to proceed, the presumption continues, having all the force of substantive evidence of negligence, until overcome by the weight of the affirmative evidence introduced in proof of due care. It follows from this, and manifestly, that the office of the presumption is inadequately, if not incorrectly, expressed, in saying that its effect is simply to change or shift the burden of proof. From the practical viewpoint, the situation does not involve a shifting of the burden of proof. The plaintiff assumes the burden of proving negligence only as he is required to prove the fire, and that it was caused by defendant; whereas, from the beginning, the burden is on the defendant to make affirmative proof that it was in the exercise of due care."

See also *Hemmi v. Chicago, G. W. R. Co.*, 102 Iowa 25, 28.

In *Currie v. Seaboard Air Line R. Co.*, 156 N. C. 419, *Northwestern Mut. Fire Assn. v. Northern Pac. R. Co.*, 68 Wash. 292 (123 Pac. 468, Ann. Cas. 1913E, 968), and other cases cited in *Pennsylvania Fire Ins. Co. v. Ann Arbor R. Co.*, 11 Neg. & Comp. Cases, 193, 204, 210, the holdings were, in fire cases, that, where there is the presumption alone on one side, and evidence opposing it, it is a question for the jury to determine whether the presumption has been overcome by the evidence. In one case, the language used was that the defendant's showing which it made was nothing more than evidence opposed to evidence, and that it was for the jury to pass on the credibility of the witnesses, and determine whether its evidence was sufficient to rebut the case made by plaintiff.

So it is in the instant case.  The injury to deceased was evidence of negligence.  We think the statute in question is as strongly in favor of treating the presumption as having the force of evidence as is the fire statute, if indeed it does not more strongly favor such a construction, for the reason that the statute itself provides that there is a presumption of negligence.  Though not cited, we think some of our passenger cases have a bearing.  In *Larkin v. Chicago G. W. R. Co.,* 118 Iowa 652, 655, the point was not directly decided that a plaintiff might rely on the presumption from the happening of the accident only, and it was not necessary to determine that question, because there was other evidence in the case for plaintiff, proper for the jury to consider in aid of the presumption; but it was said, at page 657:

"To say the least, it should require a peculiarly strong and conclusive array of proof to justify the court in withdrawing such an issue from the jury.  The question thus presented involves something more than burden of proof or order of trial."

We are of opinion that, under the record made, the case should have been submitted to the jury for its determination as to whether the statutory presumption of negligence had been overcome, and that the case should be reversed on this ground.  We think, too, that there are some circumstances in the record which it would have been proper for the jury to consider in aid of the presumption, and, as before stated, appellant contends that, aside from the presumption, there was sufficient evidence to take the case to the jury.

In view of our conclusion that the case should be reversed on the first ground, we would not be justified, perhaps, in any lengthy discussion of the second proposition, and we shall refer to that as briefly as may be.

2. As to the second proposition relied

2. NEGLIGENCE:
acts consti-
tuting: mines
and mining:
failure to
timber roof or
take down
same.

upon by appellant, in view of the directed verdict for the defendant, the evidence should be construed in its most favorable light in favor of plaintiff. It is contended for appellant that, under the evidence, she was entitled to have the case submitted to the jury on questions of fact as to whether or not the defendant company was negligent in its failure to take down dangerous portions of the roof over the roadway, or properly support the same by placing cross timbers thereunder. There is a conflict in the evidence at some points, and at others there is no dispute. The jury could have found that deceased was injured while working in Room 34. Appellee's contention is that this was his room, or working place; while appellant contends that, under the circumstances shown, it was not his working place, or at least it was a question for the jury whether it was, or whether, under the custom which was shown, it was only a roadway, and a place over which deceased did not have control, and because of the fact that there was a slip at the point in question, it was the duty of the company to timber the roof or take down the defective parts of it. Deceased was loading a car of coal, and the car was located some 8 or 10 feet back from the end of the track in the room. The car was being loaded at that point because of coal scattered along the roadway by the shots that had been discharged the night previous. Ordinarily, the place of loading the car was at the end of the track, and this was 8 or 10 feet from the working face of the coal in the room, so that the car was about 20 feet back from the face of the room. The room at the place where the slate fell was 18 or 20 feet wide. At the side of the track, in the room, debris, or gob, as the miners call it, had been placed. The room had been driven in from the entry about 60 feet, and a wooden track laid into it about 50 feet. The roof at the

point where it fell was sounded by deceased and the mine foreman, and perhaps another workman, and it was thought to be safe.  It appears, however, that there was a slip in the roof where the slate fell, which is ordinarily considered as a dangerous condition, as the portion of the roof where the slip is located is likely to fall at any time, even though it may sound solid when tested.  It is shown that the only practical and reasonably safe method to pursue in such a case is to cause cross timbers to be placed, by placing a prop on each side of the track, with a cross timber over the props and underneath the roof to support it.  This was not done.  Because of the slip, the mine foreman was suspicious of the condition of the roof.  He testified:

"My suspicion was naturally aroused as to that particular piece of slate because it had already been broken off."

So that the mine foreman had notice of the dangerous condition.  Plaintiff was injured by a piece of slate falling from the roof.  There were props and timbers at hand.  The ordinary height of the coal in the room was 4½ feet, but at the place where the injury occurred, it was 6½ feet, because some of the roof at that point had fallen prior to that time.  The piece of slate that fell was from what is termed by the miner a "jog" in the roof, and was in that portion of the roof regarded and termed by the miner as a part of the permanent roof.  It was not draw slate.

Appellant contends, and there is evidence in support of the claim, that deceased had properly placed his timbers in the usual way to support the roof, in so far as the particular kind and character of timbering was concerned which the miner is ordinarily required to do in his working place, in the performance of his work.  The mine foreman testifies that, when he was in the room, about an hour before the accident, he noticed the props of the room and noticed that the place was securely propped, and says:

"It was a part of my business when I went in there to see about the location of the props, and whether it was securely propped."

3. MASTER AND SERVANT: place of work: mines and mining: shifting duty.

The defendant contends that it was the duty of deceased to look out for his roof and to prop and timber it because it was his working place. But the statute does not define or fix the limits of his working place. As the work progresses in a mine, under some circumstances, there comes a time when it is a·question as to what is the working place of the miner, and whether it has passed out of his control and the duty devolves upon the company to look after the roof; that is where the employer's duty begins and the employee's duty ceases.

4. EVIDENCE: custom: mines and mining: propping and timbering roof.

We may not have referred to all the circumstances, but it is appellant's contention that, under the evidence shown, it was proper for it to show, by evidence of custom in this mine, that it was the duty of the company to place cross timbers over the place where the slate fell, which she says was a roadway, or to take down the defective roof, and that this is especially true where there is a slip in the roof. We think the evidence as to the custom was competent. Appellee's contention as to this evidence is that such evidence would violate the statute and the miner's agreement. But we think this is not so because, as already stated, neither the law nor the contract fixes his working place. The jury could have found that deceased had propped and cared for the roof over that part which was his working place. We think the evidence of custom was competent to show that it was the duty of the defendant, under the circumstances here shown, to look after the roof. *Thayer v. Smoky Hollow Coal Co.*, 121 Iowa 121, 125; *Taylor v. Star Coal Co.*, 110 Iowa 40; *Carnego v. Crescent Coal Co.*, 163 Iowa 194, 199.

Appellant cites Code Supplement, 1913, Sections 2489-12a, 2489-13a and 2489-14a, as to the duties of a mine foreman, and Section 2489-16a, as to the duty of the miner. What has already been said is all that is necessary as to these provisions.

We are of opinion that there was a jury question as to this second proposition. The judgment of the district court is reversed, and the cause remanded for further proceedings in harmony with this opinion.—*Reversed.*

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.