CON MARTIN, Appellee, v. E. CHASE, Appellant.

**EVIDENCE:** Opinion Evidence—Form of Question. A question which 1   calls for the opinion of an expert medical witness as to the permanency of injuries need not contain any hypothetical statement of facts, when the witness has personally examined and treated the injured party, and the facts relative thereto are in the record.

**MASTER AND SERVANT:** Workmen's Compensation Act—Action 2   Against Rejecting Master. An injured employee in an action against an employer who has, in effect, rejected the Workmen's Compensation Act, by refusing to provide the compensation insurance required by the act, need not allege any specific act of negligence on the part of the employer, and if he makes such specific allegation, *he need not prove it*, and may, irrespective of the defensive testimony of the employer, go to the jury on the presumption of negligence created by law against the employer.

**MASTER AND SERVANT:** Workmen's Compensation Act—Compen- 3   sable Injury. An injury arises out of and in the course of the employment when received by a hotel clerk while on duty, and while charged with the duty of maintaining order in the hotel, and while he is being assaulted by a person who had been refused accommodations in the hotel.

*Appeal from Woodbury District Court.*—MILES W. NEWBY Judge.

Action at law, to recover damages on account of personal injury. Trial to a jury. Verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*Henderson, Fribourg & Hatfield,* for appellant.

*Carlos W. Goltz,* for appellee.

Weaver, J.—The defendant is proprietor of a hotel in Sioux City, and for several years the plaintiff had been in his employ as a day clerk, and among other things was charged with the duty of keeping order in the office. He alleges and gives testimony tending to show that, in the early evening of November 23, 1920, while he was engaged in the performance of such service, he was approached by one Dunwoody, who asked to be assigned to a room. Dunwoody was a more or less frequent guest at the house, and was a man addicted to the use of intoxicants. On the evening of the day before, he had been refused a room by the night clerk, because of his alleged intoxication. On the occasion now in question, the night clerk was not yet on duty, and he made his request of the plaintiff, who refused, saying: "You can't get a room from me. See Mr. Chase or the night clerk." At this, according to plaintiff's story, Dunwoody became very angry, and turned to go out, telling plaintiff that he would "get him" on the street. Plaintiff, assuming that Dunwoody was gone, or was in the act of going out, stepped out from behind the counter, looking for a person who had just been called over the phone, when he met Dunwoody returning, who angrily attacked and struck him. In the effort to defend himself, plaintiff fell, breaking his knee-cap, and severely crippling him. He further alleges that, before that time, Dunwoody had brought intoxicating liquors into the house, offering the drink to other guests and conducting himself in an objectionable manner, and that he (plaintiff) had reported the fact to the defendant, who neglected to take any measures to exclude Dunwoody from the hotel.

As a witness, Dunwoody admits that, on the first occasion

when he had been refused a room, he had been drinking, but swears that, at the time of the alleged assault, he was perfectly sober, though he did "take a few drinks" later in the evening. He further denies that he assaulted the plaintiff, and alleges that the only assault was by plaintiff himself, who began the altercation by pursuing and striking the witness. The defendant himself was not present, and could not speak of the facts of that occurrence, but denies that plaintiff ever complained to him of Dunwoody's conduct, and testifies that, on the following day, plaintiff admitted to him that, when Dunwoody abused him and called him names, he "went out and dug into him," and in so doing got the fall which injured him. He also puts in evidence a written statement signed by plaintiff, in which he says that Dunwoody called him a vile name, and adds:

"I told him to go on out; I didn't want any trouble with him at all. When I told him to go, I had come out of the office. He drew back to strike at me, and I struck at him. Struck him twice, and the third time I struck, I missed him, and tripped over his foot and fell on my left knee, fracturing the kneecap. Dunwoody had had an argument with the night clerk, the night before, because of his drinking in the hotel. I heard the night clerk tell him, when he left the night before, not to come back, and he said he would. I was not on duty at the time, and said nothing."

Plaintiff and Dunwoody are the only witnesses who undertake to speak of the affair from personal knowledge. It is a noteworthy feature of the record that, although Dunwoody swears that, at the occurrence in question, there were 20 or 25 persons present, none of them except Dunwoody was examined on the witness stand. The plaintiff alleges in his petition, and the defendant admits, that, at the time in question, he had not taken out or provided any insurance against liability to his employees, under the provisions of the Workmen's Compensation Statute.

At the close of the evidence, the court overruled defendant's motion for a directed verdict, and submitted the issues to the jury, which found for the plaintiff. In this court, defendant's counsel limit their argument for a reversal to two propositions: (1) That the court erred in permitting plaintiff's two medical witnesses to testify to their judgment of the permanent character

of plaintiff's injury; and (2) that, on the whole case, there is not sufficient evidence to justify its submission to the jury.

I. Taking up these questions in the order of their statement, we are very clear that the assignment of error upon the admission of the testimony of the physicians is not well taken.

1. EVIDENCE: opinion evidence: form of question.

The qualification of these witnesses to testify as experts is admitted. Both had treated plaintiff for his injury, and both had examined the broken leg. One of them, after relating the fact of his treatment of the plaintiff's leg and describing the fractured patella, was asked, "Is there at this time, and will there always be, in your opinion and judgment, a permanent injury to that leg?" The specific objection made to this interrogatory is that it "does not contain the hypothesis which is necessary for such question to contain, in order to render it a proper one to put to the witness." The objection being overruled, the witness answered, "In my opinion and judgment, I believe there always will be some degree of loss of function of the left leg." Such loss of function the witness estimated at from one third to one half. The testimony of the other physician to substantially the same effect was admitted over like objection. It is to be remembered that these witnesses were not answering hypothetical questions. They had each already stated the facts which they knew or had learned from personal observation, and we think there is no rule or controlling precedent which makes it necessary for counsel to embody all those facts in an interrogatory calling for the doctor's opinion as to the permanent character of the injury; nor is such inclusion in the doctor's answer necessary to make it admissible in evidence.

II. That the position taken by the appellant may not be misapprehended, we quote verbatim from his brief, as follows:

"There are but two questions involved upon this appeal: First, that there was prejudicial error in the rulings of the trial court with reference to the admission of the physicians called

2. MASTER AND SERVANT: Workmen's Compensation Act: action against rejecting master.

by appellee; and secondly, that, on the whole case, the facts were such as make it an exception to the general rule laid down by this court, that ordinarily the presumption of negligence imposed by the statute has the force of substantive

evidence, which presumption, notwithstanding any evidence introduced by the employer, still leaves the question of the latter's negligence one for the jury. Unless this court intends to hold that in no case may such presumption be rebutted as a matter of law, then the case at bar is clearly one wherein the evidence offered by appellant was of such character as to conclusively rebut any presumption of negligence on appellant's part.''

The charge of the court to the jury is not set out in the abstract, but counsel for appellant say that the instructions ''correctly stated the issues as made by the pleadings, correctly defined 'preponderance of evidence,' 'negligence,' and 'proximate cause,' and, if the evidence was such as to warrant the submission of the cause to the jury, the court correctly stated to the jury, in Paragraphs 7, 8, and 9 of its instructions, the abstract propositions of law which were involved. Then the court correctly stated abstract propositions of law governing measure of damages, that the verdict must be based on the evidence and the law as to the weight of evidence and credibility of the witnesses, and submitted to the jury the usual two forms of verdict.''

We have already, in the preceding paragraph, ruled that there was no error in the admission of the medical testimony, and now turn our attention to the only other proposition relied upon by appellant, that, upon a record otherwise unobjectionable, the trial court should have held, as a matter of law, that plaintiff was not entitled to go to the jury. The argument in support of that contention is that the petition stated generally the fact of plaintiff's employment in defendant's service, and that, while so engaged, he sustained personal injury arising out of and in the course of such employment, resulting in the permanent crippling of his leg, and causing him pain, suffering, and expenses for treatment, for which he demanded recovery of damages, and that later he amended his pleading by adding thereto the allegation that, without fault on his own part, and while so employed by the defendant, he was attacked and injured by a drunken person whom the defendant had negligently failed to keep from the hotel premises; and it is insisted that, upon such statement of his cause of action, plaintiff can recover damages only by proof of negligence in the particular matter

so specified in the amendment, and that there is no evidence whatever to sustain such a finding. This proposition makes it necessary that we inquire, first, whether appellant is correct in the theory that, to entitle plaintiff to go to the jury, it was necessary for him to prove affirmatively the specific negligent act or omission mentioned in the amendment to the petition; and second, if such necessity exists, whether there is an entire absence of evidence to sustain a verdict for plaintiff. It may be admitted, for the purposes of this case, that, in a purely common-law action to recover damages for negligence, it is ordinarily necessary for plaintiff to allege the specific act or omission of which he complains, and he is charged with the burden of proving negligence in the respect so alleged; failing in which, he cannot recover. With the familiar precedents to this effect cited by counsel, we have no quarrel; but we think they do not necessarily control the case before us, which depends for its authority on the statutes applicable thereto. By the terms of the Workmen's Compensation Act, Chapter 8-A, Title XII, Code Supplement, 1913, and its amendments, legal rights and remedies pertaining to the relations between employer and employee have been essentially changed, and in all cases of that kind, save only the few employments expressly excepted from its operation, the statute is controlling. As is commonly well known, compliance by an employer with the requirements of the act are, to a certain extent, optional; but failure to comply is not without its penalty in the fact that thereby the employer's common-law rights are materially abridged. In the case before us, the defendant does not appear to have formally rejected the benefits of the act, but it is conceded at least that he never had provided insurance, as provided by law, against his liability as an employer. As applicable to this condition, the statute provides (Code Supplement, 1913, Section 2477-m 41, as amended by Section 20, Chapter 270, Laws of the Thirty-seventh General Assembly) that, in case of such neglect, the employer shall be liable in case of injury to any workman in his employ, under the common law, as modified by the statute, and in the same manner and to the same extent as though such employer had legally exercised his right to reject the compensation provisions of the compensation statute. And in connection with this en-

actment, it is still further provided (Section 2477-m, Code Supplement, 1913) that, in an action by an employee to recover damages from an employer for personal injury arising out of and in the course of his employment, where it appears that such employer has rejected the terms of the statute or failed to insure the risk, it shall be presumed that the injury to the employee was the "direct result and growing out of the negligence of the employer; * * * and the burden of proof shall rest upon the employer to rebut the presumption of negligence." Construing this statute, we have held that the plaintiff in such a case need allege and prove no more than the fact of his employment and his injury arising out of and in the course of such employment. This is a sufficient statement of a complete cause of action, under the statute, and upon proof of these facts, the statutory presumption obtains that the injury to the plaintiff was the direct and proximate result of the employer's negligence, and the burden is upon him to rebut such presumption. *Mitchell v. Swanwood Coal Co.*, 182 Iowa 1001; *Mitchell v. Des Moines Coal Co.*, 182 Iowa 1076; *Mitchell v. Phillips Mining Co.*, 181 Iowa 600. In the case first above cited, it was also held that, the statute having created the presumption attaching to the proof of injury so sustained by the employee, plaintiff is *not required to charge or prove specific acts of negligence.* The court there says: ·

"But, under the statute, he is not bound to prove specific acts of negligence as a basis for recovery. He is not bound to prove, by substantive evidence, negligence at all, as a basis of recovery. When he shows the employment, and that he was injured in the course of his employment, the law steps in, and says to the master: 'This injury is presumed to be the result of your negligence. The burden rests on you to show that this is not true, and unless you so do, you shall be holden to answer for the injury.' To say in the petition that the plaintiff based his right of action upon the negligence of the defendant, would advise the defendant of nothing more than he is advised of by the mere statement of employment and injury in the course of employment; for the law steps in at that point, and says, *prima facie,* 'This injury is due to your negligence,' and casts the burden upon the defendant to exonerate itself."

The same principle has been recognized in railway fire cases, where there is a statutory presumption of negligence from the fact of injury. *Rose v. Chicago & N. W. R. Co.,* 72 Iowa 625; *Seska v. Chicago, M. & St. P. R. Co.,* 77 Iowa 137.

We have a statute, Code Section 3639, which provides that: "A party shall not be compelled to prove more than is necessary to entitle him to the relief asked for."

It follows of necessity that, where the statute provides that a certain fact or facts will constitute a cause of action, a plaintiff alleging and proving such facts is not required to prove more, even though he has unnecessarily alleged more. This rule we have affirmed and applied in many cases. See, for example, *Central Trust Co. v. Chicago, R. I. & P. R. Co.,* 156 Iowa 104, where it is said by Deemer, J., that "plaintiff was not required to prove more than * * * would give it a prima-facie right to recover, no matter what it may have charged in the petition."

In *Ware Cattle Co. v. Anderson & Co.,* 107 Iowa 231, 234, the same eminent jurist, speaking of an action upon contract in which the plaintiff had also charged negligence, says:

"That appellee charged negligence in the petition is not regarded as controlling, for the reason that it was not required to prove more than was necessary to entitle it to the relief demanded."

See, also, *Swiney v. American Exp. Co.,* 144 Iowa 342; *Little v. McGuire,* 38 Iowa 560; *Knapp & Co. v. Cowell,* 77 Iowa 528; *Engle v. Chicago, M. & St. P. R. Co.,* 77 Iowa 661. But on no tenable theory of the law of pleading or of evidence or of the meaning and effect of the statute can it be said that the question whether the statutory presumption has been successfully rebutted is a matter of law for the court. To so hold would be to put it in the power of the court to emasculate or repeal the legislative act. The statute not only makes the proof that an injury to the employee arose out of and in the course of his employment presumptive evidence of the fault of the employer, but expressly imposes upon him the burden of rebutting it. When the evidence is all in, the plaintiff's proof of the facts giving rise to the statutory presumption on the one side, and defendant's evidence in rebuttal on the other, present an issue of fact, on which the parties are entitled to the verdict of a

jury. This principle was distinctly recognized by us in the case of *Hemmi v. Chicago G. W. R. Co.*, 102 Iowa 25, 28, a railroad fire case, where it is said that, where the statutory presumption of negligence has attached, the defendant, ''to avoid liability, must overcome this presumption, and this it can do only by negativing every fact the proof of which would justify a finding of negligence on its part. It follows, then, as said * * * in * * * *Greenfield v. Chicago & N. W. R. Co.*, 83 Iowa 270, that, if it be conceded that there was no fault in the engine or its management, it *cannot be said, as a matter of law,* that the fire was not the result of negligence. But if this were not the rule, the point relied upon by appellant is of no avail, for the reason that we have expressly held that, in such cases, there is a conflict in the evidence, the prima-facie case of negligence made by the plaintiff standing on one side of the issue, and the direct evidence of the defendant as to its care and diligence upon the other; and *that it is the duty of the court to submit such conflict to the jury.''*

This proposition is distinctly affirmed in *Babcock v. Chicago & N. W. R. Co.*, 62 Iowa 593, 597; *Greenfield v. Chicago & N. W. R. Co.*, supra; *Mitchell v. Phillips Mining Co.*, 181 Iowa 610. And see *Northwestern Mut. Fire Assn. v. Northern Pac. R. Co.*, 68 Wash. 292 (123 Pac. 468), where the defendant made the same point for which the appellant here contends, that the defendant's rebuttal was so clear, positive, and conclusive that, as a matter of law, it should be held that the statutory presumption had been overcome. The court says:

''This would be an unauthorized invasion of the province of the jury. * * * 'It was the province of the jury to decide whether defendant's rebutting proof was sufficient to overcome that presumption.' ''

In *Hockstedler v. Dubuque & S. C. R. Co.*, 88 Iowa 236, 237, we said:

''It is confidently claimed by counsel for the defendants that the evidence in rebuttal of the presumption of negligence is so conclusive as that the court should have set aside the verdict as without support in the evidence. It has been determined by this court that it is *for the jury to weigh the presumption of negligence in the balance against the evidence rebutting the*

*presumption, and determine the case as they may think it should be determined."*

Many other precedents to the same effect could be cited, but we have mentioned sufficient to indicate the rule in this jurisdiction.

The trial court did not err in submitting the question to the jury.

III. Defendant did not demur to the petition, and as we have seen, the sole question raised in argument, aside from the admissibility of the medical testimony, is the alleged insufficiency of the evidence to sustain a finding for the plain-

3. MASTER AND SERVANT: Workmen's Compensation Act: compensable injury.

tiff. The answer did deny that plaintiff's injury arose out of or in the course of his employment. It is not argued, however, that the finding of the jury in this respect is without support, and indeed, could not well be. It is admitted, however, that plaintiff was employed by the defendant as day clerk in his hotel, and it is shown without dispute that his duties as such clerk included the maintenance of order in and about the office, and presumably the other services ordinarily pertaining to such position. The credibility of the plaintiff as a witness was a question for the jury, and if the jury believed his story, it could properly find that Dunwoody, having applied to plaintiff for the assignment of a room in the hotel, and being refused, became angry, and assaulted and injured the plaintiff. An injury so sustained arose out of and in the course of his employment, within the meaning of the statute. It may be conceded, for the purposes of this case, that for injuries received in an affray having no connection with his employment there could be no recovery against the employer; but the rule is otherwise where the assault complained of grew out of and in the course of his service in such employment. It is not necessary to inquire into the merits of the quarrel between Dunwoody and plaintiff, or to assume or hold that, as a moral proposition, plaintiff was blameless in refusing Dunwoody a room; it is enough that plaintiff was attending to his duties as clerk, and was assaulted because the manner of his performance of those duties gave offense to a man seeking to become a guest of the hotel. It has so been held where an employee charged with the duty of protecting his

place of employment from trespassers is shot by a person whom he seeks to exclude. *Reithel's Case,* 222 Mass. 163 (109 N. E. 951). Where a head waiter at a hotel, having excited the anger of another waiter by discharging him, was shot by the latter in revenge for the affront so offered, the killing was held to have arisen out of and in the course of the murdered man's employment. *Cranney's Case,* 232 Mass. 149 (122 N. E. 266). To the same effect, see *Stertz v. Industrial Ins. Commission,* 91 Wash. 588 (158 Pac. 256); *San Bernardino County v. Industrial Acc. Commission,* 35 Cal. App. 33 (169 Pac. 255, 256); *Chicago, R. I. & P. R. Co. v. Industrial Commission,* 288 Ill. 126 (123 N. E. 278). So held, also, as to a bartender, shot in a dispute with a customer over the price of liquor. *Emerick v. Slavonian R. G. C. Union,* 93 N. J. L. 282 (108 Atl. 223); *State ex rel. Anseth v. District Court,* 134 Minn. 16 (158 N. W. 713); *Polar Ice & F. Co. v. Mulray,* 67 Ind. App. 270 (119 N. E. 149); *Mueller v. Klingman,* (Ind.) 125 N. E. 464.

There is no other question raised by the appeal requiring our consideration. There is no reversible error in the record, and the judgment of the district court is, therefore,—*Affirmed.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.