ALICE CASEY, Administratrix, Appellant, v. HARRY HANSEN, Appellee.

No. 46964.

. FEBRUARY 11, 1947.

Hansen & Wheatcraft, of Des Moines, for appellant.

Miller, Huebner & Miller, of Des Moines, for appellee.

GARFIELD, J.— ██ Defendant employer, Harry Hansen, had not insured his liability as provided by section 87.1 (references are to Code of 1946), nor had he been relieved from so doing pursuant to section 87.11. When plaintiff's intestate was injured defendant had more than five persons in hazardous employment. Plaintiff administratrix therefore elected, under sections 87.1 and 87.21, to sue for damages at common law as modified by Code chapter 85 of the Workmen's Compensation Law. Defendant's status is the same as if he had rejected the compensation act. Sections 87.1 and 87.21; Martin v. Chase, 194 Iowa 407, 412, 189 N. W. 958.

Defendant owns and operates several buildings in Des Moines, including the Dr. Pepper Building, the Hanwood Apartments, and the Harlan Hotel, situated within a block and a half on Locust Street. Two of defendant's brothers are equitable owners of the Harlan Hotel and assist in the upkeep and management of the three named properties and others. Decedent John Casey, a common laborer, had worked for defendant since the spring of 1944 at $100 a month. He did certain janitor work at

the Hanwood Apartments and Harlan Hotel and numerous odd jobs on different properties owned by defendant.

There is evidence that on June 26, 1945, Casey fell from a scaffold in the Dr. Pepper Building, which was under repair from damage by fire, and that he died the following day from injuries sustained in the fall. His widow as administratrix brought this action to recover for his death. A verdict was directed for defendant on the grounds (1) plaintiff failed to prove an injury arising out of and in the course of employment and (2) as a matter of law there was no negligence on defendant's part. The court indicated it felt the first ground was the stronger of the two. Plaintiff has appealed from the resulting judgment against her.

I. The burden rested on plaintiff to prove by a preponderance of evidence that Casey's death resulted from an injury arising out of and in the course of his employment. Gay v. Hocking Coal Co., 184 Iowa 949, 960, 169 N. W. 360; Mitchell v. Swanwood Coal Co., 182 Iowa 1001, 1006, 166 N. W. 391. The term "arising out of" implies some causal relation between the employment and the injury; "in the course of" means during the period of employment and at a place where the employee may be performing the duties of his employment or doing something incident thereto. Otto v. Independent Sch. Dist., 237 Iowa 991, 994, 23 N. W. 2d 915, 916, and authorities cited.

In determining whether the motion to direct was erroneously sustained, of course we must consider the evidence in the light most favorable to plaintiff. Mitchell v. Des Moines Coal Co., 182 Iowa 1076, 1078, 165 N. W. 113; Mitchell v. Phillips Mining Co., 181 Iowa 600, 612, 165 N. W. 108. When this is done we think there is substantial evidence that Casey's death resulted from an injury arising out of and in the course of his employment. We will refer to some of the testimony.

Decedent's son worked for defendant some in the spring of 1944 and the spring of 1945. He testified:

"His [Casey's] regular work was to bale paper and take out the garbage at the Hanwood Apartments and Harlan Hotel. However this did not take his full time. If he had not been instructed what to do in the morning he took out the paper and

baled it, took out the garbage and then he would go find one of the Hansens, Jack or Harry or any of them and find out what he was going to do next. * * *

"He knocked plaster off the side walls and ceiling at the Hanwood Apartments, Harlan Hotel and East 5th Street. He generally stood on a scaffold to knock the plaster off the ceiling. * * *

"He helped repair the roof of the Dr. Pepper Building in 1945. * * * must have been working repairing the roof a couple of days."

Trent, a plasterer, worked in the Dr. Pepper Building the week before Casey was hurt. He said he saw decedent come to the building at times:

"He was generally there when I got there. When 8 o'clock came Casey went to the hotel or Hanwood I suppose to bale paper and take down garbage. At times I saw Casey do work in the Dr. Pepper Building. One day he worked with me, he pulled up mortar for me. He worked all day that day. * * * Mr. Casey would do one kind of work then another, he was sort of an odd-job man."

Peterson, a carpenter who worked in the Dr. Pepper Building since March, testified:

"I saw Casey in the morning at the Pepper Building several times before we started work. When work time came he would do whatever work he had to do. Most of the time he would go to the Harlan, take care of the garbage and I don't know any more after that until I saw him off and on around the jobs. I saw Casey working at the Dr. Pepper Building two or three times, he cleaned up, picked up plaster. He also helped carry pipes and lumber around and straighten up things at the Pepper Building."

Harlan C. (Jack) Hansen, defendant's brother, said:

"He [Casey] did general labor for a day or two at the Dr. Pepper Building. I had him take down loose plaster. I served there as foreman. We had two scaffolds in the building. He worked on both knocking down plaster."

On the morning Casey was injured he arrived at the Dr. Pepper Building around 7:30. Trent, Peterson, and Estelle were also there. Defendant arrived by 7:45 and told Casey to mix a batch of mortar. Casey replied:

"I can't do it, I am not able. My back won't stand it." According to defendant: "Then I told him, 'You better go on with your regular work up to the Harlan and Hanwood * * * of taking care of the garbage and baling paper in those places.' "

The manager of the Harlan testified Casey came there about 8 a.m. and took care of the garbage and papers. The manager of the Hanwood said:

"He [Casey] came to the Hanwood about 10 o'clock. The garbage and paper had already been taken down by my brother. I told Casey the work was done and he said he was glad of it. He was not feeling well. Harry Hansen came. I told him Casey was sick and the work was done and Mr. Hansen said for him to go over to the Harlan Hotel and do the work there *if it was not done over there,* and to do what he felt like doing at the Harlan."

Defendant testified he "didn't think much of it" when the Hanwood manager told him Casey was not feeling well "as that was chronic with him."

During the same morning. Harlan C. Hansen was "knocking down" plaster from the ceiling of the Dr. Pepper Building. He was standing on a scaffold Peterson had built of two trestles or "horses" about 9 feet high, one at each end, with a floor of 2x12-inch boards, 12 feet long, on top of the trestles. A short time after Casey had been to the Harlan and Hanwood he fell from this scaffold. Apparently no one saw him fall but Harlan C. Hansen heard the thud and he, Trent, and Peterson saw Casey, seriously injured, unable to speak, on the cement floor near the scaffold. Immediately before Casey fell Harlan had knocked down from the ceiling 8 or 9 square feet of plaster. Casey was removed to a hospital, where he died the next day as a result of his injury.

Trent, who was on another scaffold, said:

"I heard some noise, but I think it was plastering coming down. I don't know whether he fell or not. I heard a noise like something heavy falling, a crash like somebody falling or some boards. I looked and saw Casey lying there. I don't remember whether there were any boards down from the scaffold."

When Casey's son learned of the injury he and his brother-in-law interviewed defendant. This is the son's testimony, corroborated by the brother-in-law:

"I asked him how my dad was hurt and he said he fell off a scaffold. I said, 'Well, what kind of work was he doing?' He said, 'I met him there at the Dr. Pepper Building that morning and told him to go to his regular job taking out the paper and garbage and then when he got that done to come back there to work.'

"Q. Was there anything else? A. Yes, I asked him if he was carrying any compensation insurance and he said no, he didn't, and my brother-in-law asked him what he intended to do about it then and he would just let it ride for a few days to see how things turned out."

Defendant admitted having talked to the son and his brother-in-law but denied their version of the conversation. There are also denials of some other testimony above referred to. We need not consider them since conflicts in the evidence were, of course, for the jury to resolve.

From the testimony the conclusion is warranted defendant directed Casey to take out the paper and garbage at the Harlan and Hanwood and then return to the Dr. Pepper Building to work and that Casey did as directed, insofar as such duties had not already been performed. The nature of the work Casey had been doing lends probability to this conclusion. While it is not shown by direct evidence precisely what Casey was doing on the scaffold at the time he fell it is reasonably probable he had gone there either to work or to receive directions from defendant or Harlan C. Hansen, the foreman, as to what he should next do. It is scarcely probable he had gone upon the scaffold for his own benefit or enjoyment nor for any other purpose than to benefit his employer. Harlan C. Hansen testified:

"You couldn't tell from the floor whether all the loose plaster had been knocked down. You would have to get on the scaffold to determine that."

In Bushing v. Iowa Ry. & L. Co., 208 Iowa 1010, 1013, 226 N. W. 719, 721, an award was affirmed, even though we said:

"In what manner Bushing got into the position in which he was found, and what he was doing at such place, is not shown * * * There was no testimony * * * Bushing had ever been on the balcony before * * *."

Casey was injured during the period of his employment and, the jury could find, at a place where he might reasonably be in performing the duties of his employment *or doing something reasonably incident thereto.* Of course, an injury may arise in the course of employment although the servant is not actually working at the time of injury. Bushing v. Iowa Ry. & L. Co., supra, 208 Iowa 1010, 1019, 226 N. W. 719; Griffith v. Cole Bros., 183 Iowa 415, 424, 425, 165 N. W. 577, L. R. A. 1918F, 923; 71 C. J. 664, section 406; id. 737, section 455. An employee does not cease to be in the course of his employment merely because he is not engaged in doing some specifically prescribed task if, in the course of his employment, he does some act which he deems necessary for the benefit or interest of his employer. Bushing case, supra; Yates v. Humphrey, 218 Iowa 792, 797, 255 N. W. 639.

We also think there is substantial evidence of causal connection between Casey's employment and the injury from which he died. It is a legitimate conclusion his injury resulted from a risk reasonably incident to his employment and not from a danger to which he would have been equally exposed if he had not been so employed. Hence the jury could find his injury arose out of the employment.

Defendant contends there was no injury arising out of and in the course of employment because Dr. Shaw testified he was present at an autopsy the day following death and:

"There was evidence of a very extensive cerebral hemor-

rhage. * * * My best judgment is the man fell because he had a spontaneous cerebral hemorrhage. * * * Not infrequently with a rupture of the larger blood vessels of the brain, the patient immediately falls.''

Two other doctors—one performed the autopsy, the other examined the brain as a pathologist—do not corroborate Dr. Shaw. In their opinion death was caused by an injury to the brain due to trauma or a blow. The pathologist's opinion was based in part upon his finding ''such a degree of laceration and bruising of the brain.'' Even without the testimony of these other doctors we would be slow to hold the opinion of Dr. Shaw, under the circumstances here, must be accepted as a verity. Assuming decedent had a cerebral hemorrhage, Dr. Shaw does not explain and it is not readily understandable how it can be concluded with certainty the hemorrhage was the cause and not a result of the fall.

Decisions which tend to support our conclusion the first ground of the motion to direct was erroneously sustained are Linderman v. Cownie Furs, 234 Iowa 708, 13 N. W. 2d 677; Danico v. Davenport Chamber of Commerce, 232 Iowa 318, 5 N. W. 2d 619; Yates v. Humphrey, supra, 218 Iowa 792, 255 N. W. 639; Bushing v. Iowa Ry. & L. Co., supra, 208 Iowa 1010, 226 N. W. 719. In each case we sustained a finding there was an injury arising out of and in the course of employment.

II. Nor do we think as a matter of law there was no negligence on defendant's part which was the proximate cause of Casey's injury. Since defendant chose not to insure his liability or to be relieved from so doing pursuant to the compensation act, he subjected himself to the statutory presumption that an injury to an employee arising out of and in the course of employment was caused by the employer's negligence and ''the burden of proof shall rest upon the employer to rebut the presumption * * *.'' Code section 85.19. (Defendant also deprived himself of certain common-law defenses. Code section 85.15. However, this question is not involved here.)

We may assume the record in a given case may be such the statutory presumption is conclusively—as a matter of law—rebutted. Here, however, we think that was a question of fact for

the jury and not one of law for the court. It is seldom a party who has the burden of proof on such an issue establishes it as a matter of law. Frideres v. Lowden, 235 Iowa 640, 642, 17 N. W. 2d 396, 397, and cases cited; Low v. Ford Hopkins Co., 231 Iowa 251, 254, 1 N. W. 2d 95. See, also, Meyer v. Postal Telegraph-Cable Co., 196 Iowa 165, 170, 194 N. W. 273; Mitchell v. Phillips Mining Co., supra, 181 Iowa 600, 606, 165 N. W. 108.

It is not claimed Casey had anything to do with building the scaffold. It was defendant's duty to furnish decedent a scaffold that was reasonably safe. Storey v. J. C. Mardis Co., 186 Iowa 809, 812, 813, 173 N. W. 115, and cases cited. Defendant undertook to prove and there is evidence that the scaffold from which decedent fell, with its floor of loose boards, was reasonably safe. Of course, a finding to that effect would be proper but it is not the only reasonable conclusion to be reached from the evidence.

Peterson, who built the scaffold, admitted "they would be safer if they [floor boards] were fastened; there wouldn't be as much chance of sliding around. The reason I said on direct examination it would not be practical to nail the planks down was because it costs additional work when you have to move the scaffolds. * * * Some contractors use platforms where the planks are nailed and fit them with castors to eliminate the impracticality of sliding them." Defendant's expert, Hartupee, also admitted it would be safer to have the boards on the platform nailed than to have them loose.

While testimony to the effect scaffolds with loose floor boards were customarily used is properly to be considered, it is not conclusive on the issue of negligence. Wood v. Tri-States Theater Corp., 237 Iowa 799, 807, 23 N. W. 2d 843, 847, and authorities cited; LaSell v. Tri-States Theatre Corp., 233 Iowa 929, 946, 11 N. W. 2d 36, 44, and citations, especially two master-and-servant cases—Korab v. Chicago, R. I. & P. Ry. Co., 165 Iowa 1, 11, 12, 146 N. W. 765, Ann. Cas. 1916E, 637; Kirby v. Chicago, R. I. & P. Ry. Co., 150 Iowa 587, 129 N. W. 963.

We are unable to agree with defendant's contention that it appears conclusively any negligence on his part was not the proximate cause of decedent's injury. On the issue of proximate

cause plaintiff is also entitled to the benefit of the statutory presumption (section 85.19) and the burden rested on defendant to show that no negligence on his part proximately caused the injury. Meyer v. Postal Telegraph-Cable Co., supra, 196 Iowa 165, 170, 194 N. W. 273, and authorities cited.

On the matter of proximate cause it is argued the scaffold was in the same condition after Casey's fall as before—there was nothing broken or loose about it. While there is evidence to this effect, the showing is by no means so conclusive as to make the issue of proximate cause one of law for the court.

Harlan C. Hansen testified:

"I think the scaffold was in the same condition afterwards as before." Peterson said: "* * * the staging was standing up like it always did and I don't know of anything wrong with it." Trent testified: "Right then I noticed nothing wrong with the scaffold. I didn't see any steps broken. The scaffold seemed to be in the same condition as it was before. Of course I didn't examine the scaffold. I didn't have it in mind." He also said: "I heard a noise like something heavy falling, a crash like somebody falling or some boards. * * * I don't remember whether there were any boards down from the scaffold. The planks were laid loose on top of the scaffold and you could slide them easily."

Hansen (defendant's brother), Peterson, and Trent either were or had been defendant's employees and were called as his witnesses. Estelle, another employee, was in the room when Casey fell but did not testify. Of course Casey's lips were sealed by death.

In support of our conclusion the issues of negligence and proximate cause should have been submitted to the jury, see Mitchell v. Phillips Mining Co., supra, 181 Iowa 600, 165 N. W. 108; Mitchell v. Des Moines Coal Co., 182 Iowa 1076, 165 N. W. 113; Storey v. J. C. Mardis Co., supra, 186 Iowa 809, 173 N. W. 115; annotation, 72 A. L. R. 94, 95, et seq.

III. Defendant argues the statutory presumption of negligence and proximate cause "is but a temporary inference that vanishes upon the introduction of opposing testimony"

and is of no aid to plaintiff because there is evidence of freedom from negligence. As defendant concedes, we have uniformly and repeatedly rejected the construction of the statute for which he contends. After thorough consideration, we have held in analogous cases that proof of an injury arising out of and in the course of employment is presumptive evidence the injury was caused by the employer's negligence and the burden is upon him to overcome the presumption, not by the mere introduction of some testimony but by a preponderance of the evidence—"that is, to negative every fact which would justify a finding of negligence."

To adopt defendant's contention would require us to overrule these decisions and some others which at least by inference hold to the same effect, not· to mention numerous other cases involving other presumptions: Mitchell v. Phillips Mining Co. and Mitchell v. Des Moines Coal Co., both cited last above; Mitchell v. Swanwood Coal Co., supra, 182 Iowa 1001, 1005, 166 N. W. 391; Gay v. Hocking Coal Co., supra, 184 Iowa 949, 960, 961, 169 N. W. 360; Butkovitch v. Centerville Block Coal Co., 188 Iowa 1176, 1191, 177 N. W. 479; Mitchell v. Mystic Coal Co., 189 Iowa 1018, 1025, 179 N. W. 428; Martin v. Chase, 194 Iowa 407, 414, 189 N. W. 958; Meyer v. Postal Telegraph-Cable Co., supra, 196 Iowa 165, 170, 194 N. W. 273. We are unwilling to repudiate the rule so firmly established by these decisions. Considerations by which the rule was arrived at are fully discussed in the cited cases.

In· a recent compensation case involving the effect of the presumption against suicide we rejected a contention similar to the one defendant makes here and adhered to our prior decisions on that question. Reddick v. Grand Union Tea Co., 230 Iowa 108, 119, 296 N. W. 800, 805. We have twice reaffirmed such holding. Allison v. Bankers L. Co., 230 Iowa 995, 999, 299 N. W. 889, 891; Brown v. Metropolitan L. Ins. Co., 233 Iowa 5, 10, 11, 7 N. W. 2d 21, 24.

Still more recently we rejected substantially the same contention defendant advances, as to the effect of the statutory presumption here, in Isaacs v. Eastern Iowa L. & P. Co-op., 236 Iowa 402, 405, 19 N. W. 2d 208, 209, which involved what is now Code section 489.15, providing for a presumption of

negligence in case of injury by a transmission line, " 'but this presumption may be rebutted by proof.' " We held such presumption must stand if not overcome by clear and convincing evidence and that the question in that case was one of fact for the jury, not of law for the court.

IV. Finally, on the strength of Western & A. R. R. Co. v. Henderson, 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884, defendant contends the presumption of negligence created by section 85.19 as construed by our decisions deprives him of due process, in violation of the Fourteenth Amendment to the Federal Constitution, and that we must overrule such decisions and hold the presumption vanishes upon the introduction of proof of due care, in order to save the constitutionality of the statute. The Henderson case is not applicable to the present controversy. Incidentally, appellant in Isaacs v. Eastern Iowa L. & P. Co-op., supra, unsuccessfully urged the Henderson decision upon us.

The Henderson case involves not a compensation law enacted under the police power of a state but a Georgia statute [section 2780, Georgia Civil Code] which provided a railroad shall be liable for any damages to persons or property by the railroad unless it shall make it appear "their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." The court held the fact of collision between a train and vehicle furnishes no basis for any inference of negligence. There was therefore no rational connection between the proved fact and what was inferred. Further, the Georgia court had held the statutory presumption could be invoked to support conflicting allegations of negligence. The holding of the case is that, as so construed, the presumption was fundamentally arbitrary and unreasonable, in violation of due process. The Henderson decision is explained in Atlantic Coast Line R. Co. v. Ford, 287 U. S. 502, 53 S. Ct. 259, 77 L. Ed. 457, 462 (Sutherland, J.).

The presumption created by section 85.19 is based on the thought that ordinarily a servant does not sustain an injury arising out of and in the course of employment when the master has discharged his legal duty of furnishing a reasonably safe

place in which to work and reasonably safe tools and appliances. Mitchell v. Swanwood Coal Co., supra, 182 Iowa 1001, 1005, 1006, 166 N. W. 391. Thus we have held there is a rational connection between the fact of such an injury to a servant, which must be proven, and the fact which is presumed—that the injury was caused by the master's negligence. The presumption therefore is not arbitrary and unreasonable like that involved in the Henderson case.

Section 85.19 provides for the presumption here involved as an inducement to employers not to reject the compensation act. Mitchell v. Phillips Mining Co., supra, 181 Iowa 600, 608, 165 N. W. 108. See, also, In re Opinion of the Justices, 309 Mass. 571, 34 N. E. 2d 527, 544. If defendant desired to avoid the effect of the presumption he had only to insure his liability or be relieved from so doing pursuant to section 87.11. He apparently chose, in legal effect, to reject the act and subject himself to whatever hardship the statutory presumption imposed.

It is well established that compensation acts such as ours are a proper and legitimate exercise of the state's police power. Their various provisions have uniformly been sustained under due-process clauses. Hunter v. Colfax Consolidated Coal Co., 175 Iowa 245, 285, 287, 154 N. W. 1037, 157 N. W. 145, L. R. A. 1917D, 15, Ann. Cas. 1917E, 803; 16 C. J. S. 1296, 1298, section 634c(1); 71 C. J. 263–266, sections 20, 21; 1 Schneider's Workmen's Compensation, Perm. Ed., 34–37, sections 12, 13.

In Hawkins v. Bleakly, 243 U. S. 210, 214, 37 S. Ct. 255, 257, 61 L. Ed. 678, 683, Ann. Cas. 1917D, 637, it is said of the statutory presumption here involved:

"* * * the establishment of presumptions, and of rules respecting the burden of proof, is clearly within the domain of the state governments, and that a provision of this character, not unreasonable in itself and not conclusive of the rights of the party, does not constitute a denial of due process of law."

A complete answer to this contention of defendant is that provisions of compensation acts more drastic than section 85.19 as construed by us have uniformly been upheld by the Federal Supreme Court and eminent state courts against similar at-

tacks. Our statutory presumption is a rebuttable one. Statutes which provide liability of the master to his servant entirely regardless of the question of fault have frequently been upheld as not in violation of due process.

It has been held time and again that awards of compensation do not violate due process even though the employer was not negligent. 16 C. J. S. 1296, 1298, section 634c(1). It is not a violation of due process that a compensation act permits recovery from an employer of damages *as at common law* even though he is without fault. Arizona Employers' Liability Cases, 250 U. S. 400, 428, 429, 39 S. Ct. 553, 63 L. Ed. 1058, 1070, 6 A. L. R. 1537, 1549 (Pitney, J.).

In Crowell v. Benson, 285 U. S. 22, 41, 42, 52 S. Ct. 285, 288, 76 L. Ed. 598, 607 (Hughes, C. J.), decided nearly three years after the Henderson case on which defendant relies, a compensation act was held not to violate due process even though employers were made liable "for the payment of amounts which would reasonably approximate the probable damages" to injured employees "irrespective of fault as a cause for the injury." See, also, New York Cent. R. Co. v. White, 243 U. S. 188, 37 S. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629; Mountain Timber Co. v. State of Washington, 243 U. S. 219, 37 S. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642; Pizitz Dry Goods Co. v. Yeldell, 274 U. S. 112, 47 S. Ct. 509, 71 L. Ed. 952, 51 A. L. R. 1376. Other decisions are cited in Crowell v. Benson, supra.

**A proposed amendment** to the Massachusetts compensation act created liability of a noninsuring employer for damages for injury to an employee in the course of employment, without proof of the employer's negligence *and entirely deprived the employer* of the defense "That the employee's injury was not a direct result of any negligence on the part of the employer." This provision is plainly more drastic than section 85.19 as construed by us. Yet it was held without dissent, on the authority of the supreme court decisions heretofore cited, not to violate due process. In re Opinion of the Justices, supra, 309 Mass. 571, 596, 34 N. E. 2d 527, 543, 545.

As defendant suggests, the federal constitutional question raised by him should be determined in accordance with the

applicable decisions of the supreme court. American Asphalt Roof Corp. v. Shankland, 205 Iowa 862, 864, 219 N. W. 28, 60 A. L. R. 986, and cases cited; Elk River Coal & Lbr. Co. v. Funk, 222 Iowa 1222, 1232, 271 N. W. 204, 110 A. L. R. 1415. The decisions we have cited and others are contrary to defendant's contention of a denial of due process.

Upon a consideration of all questions presented the judgment is—Reversed.

All JUSTICES concur.