METZGAR *et al.* v. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

| 76 | 387 |
| 111 | 385 |
| 76 | 387 |
| 119 | 279 |
| 76 | 387 |
| 134 | 457 |

1. **Railroads:** FIRES: NEGLIGENCE: EVIDENCE OF CUSTOM. It is the duty of a railroad company to use the best devices available to prevent the escape of fire from its engines, and in an action for damages caused by a fire set by defendant's engine, *held* that it was immaterial that other companies used the same appliances as defendant, and that evidence to so prove was properly excluded. (See cases cited in opinion.)

2. ——: ——: DUTY TO USE BEST PREVENTIVE: INSTRUCTION. In such case, the evidence showed that a certain device for the prevention of the escape of fire was the best, and defendant asked the following instruction: "If you find that no railroad has yet adopted and is using the said improvement exclusively, then you are warranted in concluding that the defendant is not negligent in failing to have adopted and placed the same in use exclusively upon its engines." *Held* that it was properly refused.

3.    —— : —— : ——. : ——. In such case the court properly refused to give the following instruction : " So long as defendant might reasonably use a single engine with the diamond stack, negligence could not be predicated on the fact that the engine that started the fire was a diamond stack, instead of a front-end extension,"—because it ignored the fact that an engine of that kind might properly be used at one place or season, and not at another.

4.    —— : —— : —— : ——. In such case an instruction as to the duty of defendant to employ certain improvements was properly refused, when asked by defendant, because it was based upon a theory not raised in the case, and because, further, the court had already given an instruction as favorable to defendant as the one asked.

5.    Evidence: TITLE TO HAY CUT ON ANOTHER'S LAND : AGENCY. In an action for destroying hay cut on another's land, it was proper to allow plaintiffs to show that the hay was cut on land which they leased of E., and to show by E.'s own testimony that he had controlled and had paid taxes on the land, as agent of the owner, for about fifteen years ; that he had leased it for the owner, and that he had sold the hay on it to one of the plaintiffs. This was relevant and competent to show their title to the hay.

*Appeal from Clay District Court.*—Hon. Lot Thomas, Judge.

FILED, DECEMBER 22, 1888.

PLAINTIFFS were the owners of a quantity of hay destroyed by fire on the ninth day of October, 1886. They allege that the fire was wrongfully caused by defendant, and seek to recover its value. There was a trial by jury, and a verdict and judgment for plaintiffs. The defendant appeals.

*George E. Clarke*, for appellant.

*Parker & Richardson* and *C. A. Dunwell*, for appellee.

ROBINSON, J.—The evidence shows without conflict that the hay in question was destroyed on the date alleged, by a fire which was started on or near defendant's right of way. Defendant denied the allegations of wrong on its part, and pleaded that the engine which

is said to have caused the fire was of approved pattern and manufacture; that at the date of the fire it was in good condition, and supplied with the latest improvements, and best known appliances, for preventing the escape of fire; and that it was operated in a careful and skillful manner.

I. The evidence shows that at least three different kinds of smoke-stacks were in common use with locomotive engines at the time of the fire. Defendant used two of these, known respectively, as the "diamond stack" and "straight stack and front-end extension."

1. RAILROADS: fires: negligence: evidence of custom.

It seems to be shown, if not conceded, that the kind last named was the best of those used by defendant to prevent the escape of fire. As we understand the record, the kind used with the engine which is said to have caused the fire is not shown, but it seems to be assumed that it was the "diamond stack." After showing that less than one-third of the engines used by defendant on its "I. & D." division, at the time of the fire, were equipped with the straight stack and front-end extension, the defendant offered to prove the style of stack used on the Illinois Central, Chicago, Milwaukee & St. Paul, Chicago & Northwestern, Rock Island, and Burlington, Cedar Rapids & Northern Railways, and that, with the exception of a few straight stacks and front-end extensions on the Burlington, they were all diamond stacks. The court sustained an objection to the proffered evidence, and this ruling is assigned as error. We think it was correct. The question to be determined by the jury was whether the engine in question set the fire, and, if it did, whether it was properly constructed and operated, and in good condition. If it was properly made and furnished with the required appliances to prevent the escape of fire, it was not material to show how other engines were constructed, and if it was not properly made, and was not furnished with suitable appliances, liability on the part of defendant could not be avoided by showing that it was made like most engines in use. It was the duty of defendant to

use the best devices available to prevent the escape of fire. *Jackson v. Chicago & N. W. Ry. Co.*, 31 Iowa, 178; 2 Ror., R. R. 791. This duty would not depend in any manner upon the usage of other roads. A fault is none the less a fault because it is common. *Hosic v. Chicago, R. I. & P. Ry. Co.*, 75 Iowa, 683; *Hamilton v. Des Moines V. Ry. Co.*, 36 Iowa, 38. The proposed evidence would not have shown that defendant was free from negligence in using the engine in question, nor would it have tended to establish any fact material to the defense. It was therefore properly excluded.

II. It was shown that the Burlington Company used the straight stack and front-end extension in October, 1886, on about one-half of its engines. The court refused to give an instruction asked by defendant, as follows:

2. —— : ——:
duty to use
best prevent-
ive : instruc-
tion.

"Evidence in reference to the adoption by the Burlington, Cedar Rapids & Northern Railway Company of the 'front-end' extension and straight stack' shows that even that company has not placed the same upon all its engines at the present time, and that no company, so far as the witnesses testifying on this subject know, has adopted and is using the same exclusively. This fact should be considered by you in determining whether or not the defendant has exercised proper diligence in adopting and using the same improvement, and, if you find that no railroad has yet adopted and is using the same improvement exclusively, then you are warranted in concluding that the defendant is not negligent in failing to have adopted and placed the same in use exclusively upon its engines." The court, however, charged the jury as follows: "It is the duty of defendant to adopt and use the best-known and approved appliances for the prevention of the escape of fire from its engines used in the operation of its railroad; and when an invention or appliance has been tested, and generally approved as better than that already in use by it, it then becomes the duty of the defendant, with all reasonable diligence, to adopt and

use said invention upon its engines; and it will not do for the defendant to neglect to do so until said invention has become in use by all other roads, unless by the exercise of reasonable diligence it could not sooner adopt and put in use the said improvements." This was more favorable to defendant in some respects than the instruction it asked, and covered in a general way the proposition made by defendant, so far as it was correct. But we are not prepared to hold that a railway company may defer adopting an important and necessary improvement until it has been adopted and is used exclusively by some other road.

III. Appellant complains of the refusal of the court to give the following instruction: "So long as 3. —: —: defendant might reasonably use a single —: —. engine, with the diamond stack, negligence could not be predicated on the fact that the engine that started the fire was a diamond stack instead of a front-end extension." This instruction ignores the fact that, so far as danger from fire is concerned, defendant might reasonably use engines with diamond stacks at some seasons of the year, and in some localities, without risk, and might be unable to use the same engines in other localities, or at other seasons of the year, without incurring risk. Other objections made to this instruction need not be considered. We think it was properly refused.

IV. The defendant asked an instruction as follows: "The evidence in this case shows that what is known as 4. —:—: the 'front-end extension and straight stack' —:—. is recognized by the Burlington, Cedar Rapids & Northern Railway Company as an improvement in the prevention of the escape of fire. But that is not sufficient. Before the defendant is bound to adopt or use the same, it must be generally recognized in railroad service as an improvement, and the mere fact that the Burlington, Cedar Rapids & Northern Railroad is adopting the same is not such evidence as would show that the defendant is negligent because it has not adopted and placed the same upon all of its engines."

The evidence referred to was mostly given through the cross-examination of one of plaintiffs' witnesses by defendant. It was not given to sustain any theory contemplated by this instruction, and, so far as we have discovered, no such theory was advanced in the case. We think the paragraph of the charge already quoted was fully as favorable to defendant on the duties imposed upon it by law as was the instruction refused, and we find no abuse of discretion on the part of the court in refusing to charge especially in regard to the effect of the action taken by the railway company named.

V. Appellant insists that plaintiffs failed to prove title to a portion of the hay in question, and that evidence in regard to such title was improperly admitted. It appears that a portion of the hay was made from prairie grass, which grew on land not owned by the plaintiffs.

5. EVIDENCE:
title to hay
cut on
another's
land: agency.

One of the plaintiffs testified that a portion of the hay destroyed was cut on land which he leased of one Edmunds. The latter testified that he had the handling and controlling of this land as agent, and had acted in controlling it and paying taxes on it for the owner since 1870 ; that he had leased it for the owner ; and that he sold the hay on it, in 1886, to one of the plaintiffs. Defendant objected to the evidence of Edmunds, on the ground that it was an attempt to show an agency and transfer by an agent of an interest in real estate, and that the fact that Edmunds had paid taxes on the land, and looked after it, did not create such an agency as would authorize him to make a lease, for the reason that the growing grass was a part of the real estate. Without conceding the law to be as claimed by appellant, we would say that it was not shown that the grass was growing when sold. Plaintiffs did not enter upon the land as trespassers, but under, at least a license. In this respect the case is different from the facts involved in *Lewis v. Chicago, M. & St. P. Ry. Co.*, 57 Iowa, 128, and *Murphy v. Sioux City & P. Ry. Co.*, 55 Iowa, 474. The agency of Edmunds, the length of time he had controlled

the land, and his sale to plaintiffs, authorize the presumption that their acts in entering upon the land and making the hay were rightful. We think the evidence in question was properly admitted. *Bulliss v. Railway Co., post*, p. 682.

VI. We have examined the record with respect to other objections made by appellant, but do not find that any of them are well founded. The judgment of the district court is

AFFIRMED.