JOHN P. KIRBY, as Administrator of the Estate of WILLIAM J. KIRBY, Deceased, Appellant, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellee.

**Railroads:** NEGLIGENCE: DEFECTIVE ENGINE: INSTRUCTION. In this action for the death of a locomotive engineer caused by an explosion of the boiler, a requested instruction that if the lowest gauge-cock on the locomotive was too low and the explosion occurred by reason thereof, where it appeared that the use of a water glass made the gauge-cock unnecessary, was properly refused.

**Same:** GENERAL USE OF LIKE ENGINES: INSTRUCTIONS. General use of locomotives of a particular type may be shown on an issue of negligence in the use of that kind of a locomotive, but such evidence is not conclusive against negligence in a particular respect; and in an action for the death of an engineer caused by the explosion of the boiler, an instruction that if like locomotives were in general use by other reasonably prudent railways there should be a finding for the defendant, was erroneous.

*Appeal from Linn District Court.*—Hon. W. N. Treich-
ler, Judge.

SATURDAY, FEBRUARY 11, 1911.

Action to recover damages for the death of plaintiff's
intestate while in the employ of the defendant as locomo-
tive engineer, alleged to have resulted from the negligence
of the defendant in the use of a defective locomotive.
There was a verdict and judgment for defendant.   Plain-
tiff appeals.—*Reversed.*

*Dawley & Wheeler,* for appellant.

*Carroll Wright, J. L. Parrish,* and *Grimm & Trewin,*
for appellee.

McCLAIN, J.—Plaintiff's intestate was killed by an
explosion of the locomotive which he was operating on de-
fendant's railroad, and the alleged negligence of the de-
fendant was in continuing to use the engine in question
when charged with knowledge that it was defective in
construction and repair in such respects as would render
it liable to explode.

I.   The locomotive which exploded was of a type de-
scribed by witnesses as the "1,400 class," and its par-
ticular number was 1,422.   The characteristics of this class

1. RAILROADS:
negligence:
defective en-
gine: instruc-
tion.

of locomotives seem not to be material to
the determination of the questions discussed
by counsel except in this respect, that the
lowest of the three gauge-cocks by which
the engineer tests the height of the water in his boiler
should be four or five inches above the crown sheet of the fire
box, while in this locomotive it was only two and one-eighth
inches above the crown sheet.   The importance of being
able to test the height of the water in the boiler above the

crown sheet was shown to be that, if the water is, so low in the boiler that it does not cover or sufficiently cover the crown sheet, there is danger that the crown sheet will be so affected by the fire in the fire box that the boiler is liable to explode by reason of the resulting weakness at this point. There was evidence tending to show that the crown sheet of this locomotive, when examined after the explosion, had been partially fused and rendered thin in one place, and that the appearances of the metal indicated that the water at the time of the explosion was much lower than the top of the crown sheet. As to this matter, the only assignment of error is as to the refusal of the court, on defendant's request, to give the following instruction: "If you find from the evidence that the lowest gauge-cock on engine 1,422 was too low, and that the explosion occurred by reason thereof, and that said William Kirby was not guilty of contributory negligence, then your verdict should be for plaintiff." The evidence shows, however, that in the ordinary operation of a locomotive the engineer depends for information as to the height of water in his boiler on a water glass, and that this locomotive was provided with such water glass located beside the gauge-cocks, and if the water glass was in operation the use of the gauge-cocks was wholly unnecessary. Such cocks are useful for determining whether the water glass is working, although that fact may also be determined by the engineer operating the engine by observation of the water in the glass itself. The water glass on this engine was so arranged that the lowest level of the water in the boiler as shown by it would be four inches above the crown sheet.

It therefore appears that, had the lowest gauge-cock been the proper distance above the crown sheet, it would not have given the engineer any information as to the height of the water which he could not have derived from an inspection of the glass; while, as it was in fact situated at a lower level than that of the lowest limit of the water

glass, he might have ascertained whether the water had
·fallen below a level of two and one-eighth inches above the
crown sheet. It is impossible to see how the fact that the
lowest gauge-cock was lower than the lowest limit of the
water glass could have been the proximate cause of the
explosion. This is apparent for two reasons: First, be-
cause the evidence as to the condition of the crown sheet
after the explosion clearly shows that the water had fallen
much below the level of the lowest gauge-cock, so that, if
it had been four inches above the crown sheet, it would
have given the engineer no information which it would
not actually have given him if he had used it with refer-
ence to the height of the water; and, second, because there
is no evidence whatever that the engineer had any occasion
to resort to the gauge-cocks for the purpose of observing
the height of the water. If there had been a finding
for the plaintiff predicated on the negligence of defendant
in having the lowest gauge-cock less than four inches
above the crown sheet, it would necessarily have been
without support in the evidence, and there was no error,
therefore, in refusing the instruction asked.

II.    The court gave two instructions relating to the al-
leged negligence of the defendant in sending out decedent
with a locomotive which was defective in construction and

2. SAME: general
use of like
engines:
instructions.
repair in such respects as to render it lia-
ble to explode. As it is contended that these
instructions contained erroneous and con-
flicting statements of law, they are set out in full:

(3)    You are instructed that, before the plaintiff can
recover in this action, you must be satisfied by a fair pre-
ponderance of the evidence that decedent was not guilty
of contributing to the accident complained of, and also
that the accident and injury was the result of the defend-
ant's negligence. You are further instructed that, if you
·find that the locomotive boiler in question was of a design
and plan such as are in ordinary and general use by rea-
sonably careful and prudent railways, then your verdict

must be for the defendant; but if you find by a preponderance of the evidence that the locomotive boiler in question was faulty in design and plan, and that the explosion was due to faulty design, which defects in the boiler construction the defendant in the exercise of ordinary care could have discovered, and you further find the decedent, William J. Kirby, was not himself guilty of contributory negligence, then your verdict should be for plaintiff.

(5) You are instructed that if you find from the evidence that the locomotive in question was a reasonably safe engine, and it was such as was in general and ordinary use by reasonable and prudent railways, then defendant would not be liable, and you should so find. The defendant was in duty bound to use reasonable care in the selection of the locomotive in question, to see that it was reasonably safe in its design and plans when operated with ordinary care, and if you find by a preponderance of the evidence that the locomotive in question was not properly constructed, and defendant could have, in the exercise of ordinary care, discovered such defects, then, in that event, defendant would be guilty of negligence.

The objection to these instructions most strongly urged is that the jurors were thereby directed to find the defendant not negligent in the respect complained of if the locomotive boiler was in design and plan such as is in ordinary and general use by reasonably careful and prudent railways, and it is contended that in several cases decided by this court general usage of other railways has been held no proper test for determining the negligence in a particular case. If the instructions had been to the effect that the jury might find want of negligence from the general use by other railways of locomotives of similar design, construction, and condition then the objection urged would have been supported by several decisions of this court. In *Hamilton v. Des Moines Valley R. Co.,* 36 Iowa, 31, a requested instruction was held properly refused in which the negligence of the defendant in transporting a car loaded with timbers, which projected beyond the end of the car, was made to depend

upon whether the car was loaded as similar cars had been "usually and commonly loaded and carried over defendant's road and all other railroads," and the court said that the instruction was properly refused "for the obvious reason that habits of negligence on the part of the defendant or other railroads will not relieve them from the consequence of their negligent acts." In *Allen v. Burlington, C. R. & N. R. Co.*, 64 Iowa, 94, where the negligence of the defendant alleged was in allowing a cattle chute to project too near the track, resulting in injury to a brakeman, an instruction was held to have been properly refused, which made the negligence of defendant depend upon whether the chute was "constructed at the usual distance from the track at which such tracks are usually located on well regulated railroads generally;" the court saying: "The usual custom or practice of railroad corporations in operating their roads and in constructing their machinery and buildings can not be the ground of relief from liability for injuries sustained, if the custom or practice disregards the safety of the employees as required by the law. In that case it would simply be nothing more than negligence practiced habitually by the corporations." In *Hosic v. Chicago, R. I. & P. R. Co.*, 75 Iowa, 683, the question was whether defendant was liable for injury to a brakeman due to failure to provide a platform car on which agricultural implements were loaded with a footboard on which the brakeman might pass over it, and the court said that, if the jury found defendant to be negligent in not providing a footboard, "the fact that such negligence was usual or customary would not relieve defendant from liability for its consequences." In *Metzgar v. Chicago, M. & St. P. R. Co.*, 76 Iowa, 387, it was said that the liability of the defendant for using an engine which emitted sparks setting out a fire could not be avoided by showing that the engine in question was made like most engines in use,

and the court employed this language in stating the proposition: "It was the duty of the defendant to use the best devices available to prevent the escape of fire. . . . This duty would not depend in any manner upon the usage of other roads. A fault is none the less a fault because it is common." Evidence offered tending to show that engines of similar construction were in general use on other roads, for the purpose of showing that the defendant was not negligent in the use of the engine in question, was therefore held to have been properly excluded.

It is contended however, for the appellee, that these cases have been overruled by this court in the case of *Austin v. Chicago, R. I. & P. Co.,* 93 Iowa, 236, where instructions allowing the jury to consider evidence as to the custom in the particular referred to relating to alleged negligence were sustained as against plaintiff's contention that they were in conflict with the announcements of opinion in preceding cases. The view of the court in the case last above cited is well stated, however, in the following quotation: "An act of construction, in such matters, may be said to be, of itself, negligent, when, with the purposes of construction in mind, together with the hazards of its use, a better plan is apparent. If no better plan is apparent, the party is left to inquiry and determination as to what course of conduct will give him legal protection; or, in other words, what course of conduct will amount to diligence. The instructions give the rule that, if in such inquiry and determination they adopt the custom of other well-managed roads in the same particulars, that fact may be considered in finding whether or not they acted as reasonably careful men. It seems to us that, under such condition, it is the common experience of mankind to be governed more or less by the experience of others. It is a line of inquiry nearest to a demonstration of what is best. In fact, were roads constructed in these particulars without inquiry to know the results of time and experience,

that fact alone would be strong, if not conclusive, evidence of negligence. We discover nothing contradictory in the instructions; but, on the contrary, they seem to express pertinently and aptly a wholesome rule of law." It is apparent, therefore, that the adoption of the custom of other well-managed roads in the same particulars is only to be considered in finding whether or not the defendant railroad acted with reasonable care and prudence, and this was the holding in *Cooper v. Central R. Co. of Iowa,* 44 Iowa, 134, cited and quoted from in the *Austin* case.

In accordance with the views thus expressed, evidence of the general use of locomotives in design and plan such as the one in question by reasonably careful and prudent railways was properly received as bearing on the question of defendant's negligence in using such style of locomotive; but such evidence, although uncontradicted, would not justify the giving of an instruction to the effect that, if locomotives such as that in question were in general use on reasonably careful and prudent railways, then the verdict must be for defendant, for railways which are in general well managed in respect to prudence and care in the selection of machinery may nevertheless in particular instances be negligent, and it can not be said that the concurrence in such negligence by many well-managed railroads changes the character of the act itself. If it be said that, in case they found the use of that style of locomotive was negligent, the jurors would have been justified in finding that the railroads concurring in its use were not reasonably careful and prudent, then it must be said that the instructions left the jury to consider a false issue; that is, the reasonable prudence and care of other roads in using such style of engine. At any rate, such form of instruction would be objectionable as making the test of such reasonable care and prudence the care and prudence of such railways in other respects. Assuming, then, that the first of the two instructions above quoted contained an

independent and authoritative announcement to the jurors that, if they found the locomotive boiler in question to have been in design and plan such as were in ordinary and general use by reasonably careful and prudent railways, then their verdict must be for the defendant, we reach the conclusion that there was error. There is manifest difference between taking into account the ordinary and general use of careful and prudent railways in determining what a careful and prudent railway should have done in the particular matter, and, on the other hand, accepting such ordinary and general use as conclusive evidence of due care. To give such conclusive weight to the evidence 'of use is to require the jury to ignore all other evidence as to the defective and dangerous character of the type of engine in question as bearing upon the inquiry whether a reasonably careful and prudent railway would use such style of locomotive.

We find no authority in cases cited by the appellee for a conclusive instruction· based on the general usage of other reasonably careful and prudent railways. In *Mayer v. Detroit, etc., Ry.*, 142 Mich. 459 (105 N. W. 888), the question was whether the defendant was negligent in failing to provide its street· cars with sand boxes which could be automatically used when occasion required, and the court found that on the record there was no evidence that similar cars on other roads were generally equipped with sand boxes, or that such equipment was essential to the safe handling of the cars. In *Prybilski v. Northwestern Coal R. Co.*, 98 Wis. 413 (74 N. W. 117), the failure to use a particular form of covering on a coal dock to prevent coal from falling on the employees on the dock from buckets used in hoisting coal overhead was held, in view of the evidence, not to be shown to be negligent; but there is nothing to indicate that evidence of usage in this respect should be regarded as conclusive. The

case of *Louisville R. R. Co. v. Allen,* 78 Ala. 494, relates also to the question of negligence in fact, rather than to the question of a conclusive instruction, and goes no further than to justify the determination by the jury of the fact of negligence in view of the evidence of general usage on the part of other careful and prudent persons engaged in a like business.

It is contended, however, that in the instruction quoted the court did not make the general usage of reasonably careful and prudent railways conclusive, for it was referred to the jury to say finally from the evidence of such general and ordinary use and from the evidence that the locomotive in question was a reasonably safe engine, whether defendant was negligent. The difficulty is that this argument as to the construction which should be put upon the language used makes the two instructions irreconcilable. In the first of them the jurors were told that, if such locomotives were in general use by other reasonably careful and prudent railways, their verdict should be for the defendant, while the most liberal construction which can be given to the second of the instructions in favor of the defendant is that such fact could be considered only in determining whether the use of such engine by defendant was negligent. In the face of the unequivocal direction in the first instruction, we are unable to say that the jury must have disregarded that direction in favor of the direction contained in the second instruction.

For the error pointed out in the second division of this opinion, the judgment is *reversed.*