CHARLES F. REED, Respondent, v. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, Appellant, No. 41936—239 S. W. (2d) 328.

Court en Banc, May 14, 1951.

(1)

*Carl S. Hoffman* and *A. E. Elliott* for appellant.

*Lynn M. Ewing, Amos Wight* and *Ewing, Ewing & Ewing* for respondent.

WESTHUES, C.—Respondent, Charles F. Reed, was injured on January 23, 1947, while unloading a carload of electric power line poles in the defendant's railroad yards at Fayette, Missouri. Suit was filed in Vernon County, Missouri, where upon a trial, a jury returned a verdict for plaintiff in the sum of $17,992.17. From the judgment, the defendant railroad appealed.

The shipment originated at Picayune, Mississippi. The car was loaded by the Goodyear Yellow Pine Company. The car in question was a flatcar and belonged to the Chicago and Northwestern Railroad. The consignee was plaintiff's employer, J. R. Foree Construction Company, at Fayette, Missouri. The car was routed via the Pearl River Valley Railroad, then the Southern Railroad, then the Frisco Railroad to St. Louis, Missouri, where it was transferred to the defendant M-K-T Railroad and was delivered at Fayette on January 22, 1947. It was placed on a track south of the depot for unloading. Plaintiff and Clark Plybon, another employee of the Foree Company, were in the process of unloading the poles when plaintiff was injured.

The questions preserved for review in defendant's brief are: the sufficiency of the evidence to support the verdict; plaintiff's contributory negligence; refusal of the trial court to give an instruction limiting the amount of damages; admission in evidence of a book containing rules governing the loading of poles in carload lots; and the question of whether the verdict is excessive.

Plaintiff testified that the flatcar in question had 94 poles on it and the height of the load was slightly over six feet. To secure the poles on the car, three wooden stakes were placed in pockets on each side of the car and three steel bands were drawn around the load. Reed testified that he had had instruction and had had experience in unloading such poles; that he followed the usual method on this morning. He stated he first notched the stakes on the south side of the car to which side he desired the poles to roll; that he then

4

went to the north side and cut the steel band on one end of the load and then on the other end; that he then went to the center of the car to cut the center band but before he could do so, the band and the stakes on the north side as well as those on the south side broke and some of the poles rolled off the car on each side. The poles that rolled to the north pinned plaintiff's right leg against the depot. He testified that he was not released for about an hour and that it required a wrecker to remove the poles and thus to effect his release.

Clark Plybon corroborated plaintiff and further testified that the stakes on the north side of the car were dry, brittle, and doty; that the stakes were not fastened across the top of the load by a wire or band.

Earl Johnson, another employee of Foree, testified that he examined the broken stakes; that they were brittle, dry, and doty; that the stakes broke at the tops of the stake pockets or sockets; that the lower ends of the stakes were still in the pockets when he made his examination.

The charge of negligence was failure of the defendant railroad to make a proper inspection of the carload to discover that it was unsafe and failure to warn the consignee of the danger before delivery.

There was ample evidence to justify a finding that the stakes used as supports on the north side of the car as it was placed at the station at Fayette were not as required by the rules governing the loading of poles. The rules governing the loading of flatcars with poles of the kind contained in the shipment required the use of saplings or hardwood such as southern pine, long-leaf pine, or others as named in the rules. There was evidence introduced by the defendant that saplings were used on the car in question. Plaintiff introduced substantial evidence that the stakes were dry, brittle and doty. Defendant also introduced evidence that each pair of stakes was fastened to each other by a band or wire across the load of poles. Plaintiff introduced evidence to the contrary. It was admitted that three steel bands had been drawn around the load.

The defendant argues that the trial court erred in admitting in evidence a book of rules governing the loading of commodities on open top cars. The rules were published by the Association of American Railroads. A number of the defendant's witnesses testified that they were acquainted with the rules. These witnesses also testified that they inspected the car in question and found it to be loaded in accordance with these rules. It was further shown that the defendant was a member of the association. One of these witnesses who ▆▆▆ was a conductor for the Pearl River Valley Railroad stated if the car in question had not been loaded according to these rules, the car would not have been accepted for transportation. W. L. Charles, a conductor for the defendant railroad, testified he inspected the train of which the car in question was a part and found

the car in good condition; that the inspection was made at West Alton, Missouri, a few miles north of St. Louis. Note a portion of his evidence:

"The Witness: What I mean by perfect condition is as far as I am individually concerned the car was—the poles were securely fastened on the car, the stakes were wired and it was safe to handle. We have a very crooked railroad and we watch them things very close."

In justice to the defendant railroad we quote the explanation of the above statement as given by the witness. He was further examined as follows:

"Q. (By Mr. Elliott) What do you mean by 'crooked railroad'? Just describe whether there are curves in the road running from St. Louis - -

"A. Practically curves from Franklin to St. Louis. We have very little straight track. Not over 3 miles in any one place do we have a straight railroad down there."

The rules governing the loading of flatcars were admissible in evidence on the question of whether the car had been properly loaded. The defendant offered evidence showing that all parties connected with the loading and shipment of the car while in transit were acquainted with the rules and governed themselves accordingly. The point must be ruled against the defendant.

The defendant says that its duty ended when the car was delivered in a safe condition at Fayette and spotted for unloading; that the defendant or other railroads hauling the car had nothing to do with the loading or unloading and, therefore, it was not legally responsible to plaintiff for his injuries. The defendant cites 10 C. J. 103, Sec. 120; Anderson v. Southern Ry. Co., 20 F. (2d) 71; Southern Ry. Co. v. Edwards, 44 F. (2d) 526; Lewis v. New York O. and W. Ry. Co., 210 N. Y. 429, 104 N. E. 944; Stokes v. Burlington-Rock Island R. Co., 165 S. W. (2d) (Tex.) 229. The text in 10 C. J., supra, deals with injuries or damages to the merchandise shipped and, therefore, is not authority on the question now under consideration.

In the Anderson case, supra, the court did say that the defendant railroad was not liable to an employee of the consignee where stakes holding poles on a flatcar broke and caused the poles to roll on the employee causing his death. The court, however, decided that the car had been loaded according to the rules of the Association of American Railroads. The court also decided that the deceased had been guilty of negligence as a matter of law. The case of Southern Ry. Co. v. Edwards, supra, was also a case involving the unloading of poles from a flatcar. The court held that the danger in that case was open and visible and any danger was assumed by the employee of the consignee.

In the Lewis case, supra, an employee of a consignee of a carload of baled hay was injured when a bale fell on him as he opened the boxcar door. The hay had been loaded by the consignor. The court held the railroad not liable because the car was delivered in a safe condition; that the improper loading of the car could not have been discovered by inspection without breaking the seal and opening the door which the railroad had no authority to do.

In the Stokes case, supra, the Texas court held plaintiff had not proven that any one of the defendants was negligent. The court also held that the logs had been properly loaded according to the rules of the railroad association.

Plaintiff cited a number of cases, among which we find Willis v. Atchison, T. & S. F. Ry. Co., 352 Mo. 490, 178 S. W. (2d) 341, l. c. 344. In that case this court held the railroad company liable for injuries sustained by an employee of the consignee of a carload of automobiles. The court based liability on the theory that the agent of the defendant had inspected the unloading device on the car and had advised the employees of the consignee as to the manner of unloading. The unloading device proved to be defective and an employee was injured. The unloading device was treated as a part of the railroad car and its equipment. A number of other cases were cited where the defect causing injury was in the railroad car and liability was based on the theory that it was the duty of the railroad to furnish reasonably safe cars. Such cases are not in point. Plaintiff cited two cases which we deem in point. Michelsen v. Erie R. Co., 147 A. (N. J.) 535, and Hanson v. Ponder, 300 S. W. (Tex.) 35. In the New Jersey case an employee of a consignee of a carload of logs was injured when a stake broke while the car was being unloaded. The court held the railroad liable saying, "a railroad company is under a legal obligation to its employees to make reasonable inspection of cars hauled over its road. No reason can be suggested why the same rule of reasonable care and inspection does not apply to the employees of the consignee, when unloading the cars." In Hanson v. Ponder, supra, the court held that the stakes were a part of the equipment of the car and held the railroad liable on the theory that when a defect existed in the stakes, it should be treated as though the stakes were a part of the flatcar. In each case it was held that the question of the railroad's negligence was for a jury.

It is evident that the cases above discussed are in conflict. No Missouri case in point has been cited and our research failed to discover any in which such a question has been presented.

What is the just rule to be followed is the problem before us. It seems to us that the better and just rule is to deny liability on part of the railroad under circumstances as presented in this case. We have here a shipment of long, heavy poles in carload lots. The rail-

road furnishes the car. The seller or consignor of the poles performs the task of loading the poles on the car. The railroad takes no part in this task except to say to the consignor that he must load the poles according to the rules adopted by the railroad association. These rules are in existence primarily for safety purposes while the car is being transported. The railroad inspects the carload and determines if it is safely loaded for transportation. If it is, the car is accepted and transported to its destination. When the car reaches that point, it is placed at a convenient place to be unloaded by the consignee. The railroads have no rules as to how or in what manner the poles are to be taken from the car, whether by man power or by a crane. This task of unloading is left entirely to the consignee. He and he alone has the final and only authority to direct the manner of unloading. No employee of the railroad aids or is required to be present when the unloading takes place. Experts in the art of unloading such loads are usually employed. Plaintiff in this case was experienced in unloading poles.

The consignee and his employees are just as competent to determine whether the stakes alone are sufficient to hold the load of poles after the steel bands and wires are cut as are the employees of the railroad. If the railroad is to be held liable, then in justice it should have the right to dictate the manner of unloading. It seems to us that there is always an element of danger when dependence is placed upon a few stakes to hold such a heavy load. The cases above-discussed demonstrate the danger as does the case now before us where the steel bands holding the load were cut, thus throwing the entire strain on the stakes. The following suggestion was made in Anderson v. Southern Ry. Co., supra, 20 F. (2d) l. c. 73 (3-4): "The stakes could have been braced from the ground on one side, so that the poles would only roll off on the sides where the skids had been set for them to roll off, or the last wire could have been cut by some long-handled instrument. Even if it were impossible to unload the car safely, the deceased, as foreman, should not have permitted the unloading in a manner so hazardous and dangerous as was the course taken."

We have determined that justice will be best served by following the two Federal cases cited supra, i.e., Anderson v. Southern Ry. Co., and Southern Ry. Co. v. Edwards.

We have also determined that the stakes selected and used by the consignor in loading the poles on flatcars should not be treated as a part of the railroad car equipment and on that theory hold the railroad liable. In Anderson v. Southern Ry. Co., supra, 20 F. (2d) l. c. 73 (1), the court ruled as follows. "It is undisputed that, in the loading of poles of the character of those in this instance, new and different stakes have to be used with each load; the stakes being destroyed with the unloading. Under these circumstances it could hardly be held that an insufficient number of stakes inferior in quality,

could constitute a defect in the car itself. They were not parts of the car, and the car could not be used for the purpose of hauling other classes of freight, with different stakes, or without any stakes whatever.''

In Michelsen v. Erie R. Co., supra, the court correctly ruled that a railroad was obligated to make reasonable inspection of cars for the protection of its employees. The court also said, ''No reason can be suggested why the same rule of reasonable care and inspection does not apply to the employees of the consignee, when unloading the cars.'' That rule holds good as to defects in the car itself or equipment furnished by the railroad. For the reasons heretofore suggested we do not think it proper or just to extend the rule to cover cases of the nature of the one now before us. It would seem that from the unfortunate results which have been the outcome of this method of unloading poles and logs from flatcars, as evidenced by the above cases, that in some way the stakes should be braced at the time of unloading. The result was death in the Michelsen, Anderson, and Edwards cases, and serious injuries in others. It must also be noted that in a number of cases the poles had been properly loaded according to the rules and yet injury resulted because the stakes alone were not strong enough to support the load. From an examination of the rules and the cases supra, it seems to us that it was not intended for the stakes to hold the poles without other supports.

From what we have said, it follows that the judgment must be and is hereby reversed.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the Court en Banc. *Hollingsworth, Dalton, Leedy, Tipton* and *Conkling, JJ.*, concur and *Hyde, C.J.*, concurs. *Cave, J.*, concurs in result.