**REDDING v. LONG–BELL LUMBER CO. et al.**

**No. 14784.**

United States Court of Appeals,
Eighth Circuit.

Oct. 19, 1953.

Paul W. Steward, Des Moines, Iowa (A. B. Crouch and L. J. Holroyd, Jr., Des Moines, Iowa, on the brief), for appellant.

Maxwell A. O'Brien, Des Moines (Parrish, Guthrie, Colflesh & O'Brien, Des Moines, Iowa, on the brief), for appellee Long-Bell Lumber Co.

John L. Butler, Eldora, La. (Lyman R. Lundy and Lundy, Butler & Lundy, Eldora, La., on the brief), for appellee Minneapolis & St. L. R. Co.

John N. Hughes, Des Moines, Iowa (Joseph H. Miller, Richard B. Elster, St. Louis, Mo., Donald Evans, and H. R. Duncan, Des Moines, Iowa, on the brief), for appellee Wabash R. Co.

B. A. Webster, Jr., Des Moines, Iowa (R. L. Read and A. B. Howland, Des Moines, Iowa, on the brief), for appellee Chicago, R. I. & P. R. Co.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a judgment of dismissal based upon a verdict directed by the court in an action in which appellant sought to recover damages for personal injuries suffered by him while he was unloading a carload of creosoted poles at Oskaloosa, Iowa on the 27th day of February, 1950. The parties will be referred to as they appeared in the trial court. At the time of receiving his injuries plaintiff was an employee of Mahaska County, Iowa. In his complaint he alleged that Mahaska County had ordered the piling from the Pioneer Lumber Company of Des Moines, Iowa, which in turn placed the order with defendant Long-Bell Lumber Company; that the piling was loaded on a flatcar by the Long-Bell Lumber Company at DeRidder, Louisiana; that the initial carrier was the Texas & New Orleans Railway Company; that the Chicago, Rock Island & Pacific Railway Company and the Wabash Railroad Company were intermediate carriers, and that the defendant Minneapolis & St. Louis Railway Company was the delivering carrier. He charged negligence in connection with the loading of the poles in that the side stakes on each side of the flatcar were insufficient in number and strength and that they were insufficiently secured and wired; that the carriers were negligent in the matter of inspecting the car as loaded and in transporting and delivering it in an unsafe and dangerous condition and in not warning or advising the plaintiff or his employer of the defects in the side stakes and wiring and that plaintiff did not know of such defects. He also alleged specifically his freedom from negligence.

Each of the defendants filed a separate answer. Each denied negligence so far as it was concerned. Each alleged that it had no control over the matter of unloading the car and that it had been delivered to and was in the exclusive possession of plaintiff's employer at the time plaintiff received his injuries, and each pleaded that the accident causing plaintiff's injuries resulted from his own negligence and that plaintiff had assumed the risk of unloading the poles in the manner in which he undertook to unload them. There were other specific affirmative allegations in the various answers which in our view are not material to the controlling issues in the case.

The poles were furnished by the Long-Bell Lumber Company and loaded by that company onto a flatcar at DeRidder, Louisiana. The poles were 35 feet and 40 feet in length; the 40 foot poles were loaded on the bottom of the load

and the butts and tips of all poles were alternated. The entire load of poles weighed 98,500 pounds, and was built up to a height of about 10 feet from the floor of the flatcar. Four hardwood stakes about 12 feet in length were placed in pockets on each side of the car. These stakes were held in place in the pocket by a hardwood wedge and a 40-penny nail was driven in just below the pocket to keep the side stakes from climbing out of the pocket. There was evidence that there was a floating fifth stake on each side of the car but detached therefrom. These floating stakes were held together by wires. As the car was loaded these four side stakes on each side of the car were wired together across the car at three places, the first wires being about 2 feet above the floor of the car, the next set about half way between the first set and the top of the load, and the final or top set being across the top of the load. Eight strands of No. 10-gauge wire were used to connect these side stakes at each of the points referred to and the wire was tied on each side to the stake and twisted so as to take up the slack. The center or floating stakes were not attached to the car or in the car pockets but there were four cross wires between the floating stakes. All of the poles making up this load had been creosoted and were smooth and slippery. The car was transported over lines of the Texas & New Orleans Railway Company, the Chicago, Rock Island & Pacific Railway Company, the Wabash Railroad Company and the Minneapolis & St. Louis Railway Company and delivery was made by the Minneapolis & St. Louis Railway Company to Mahaska County at the written request of the consignee, the Pioneer Lumber Company. In making delivery the car was switched onto the Mahaska County spur track where it was taken over by Mahaska County and its employees. None of the defendants had any control over the matter of unloading the car and gave no directions relative thereto.

The spur track onto which this car was switched extended in a northerly and southerly direction and there was evidence that there were some loose wires near the southeast corner of the car about 2½ or 3 feet up from the floor of the car. On the morning of the accident a crew of three men went to the car for the purpose of unloading it. The method of unloading was by using a dragline to lift the poles off the car one at a time after the top wires between side stakes were cut. Plaintiff's job was to hook the tongs of the dragline to the piling on the car from his position on top of the load. Preparatory to using the dragline plaintiff and another member of the crew climbed onto the top of the load of poles at the south end, and plaintiff holding a bar and the other employee using a hammer started cutting the bands of wires between the side stakes across the top of the car. They cut all of the wires across the top in this manner and when the last wires were cut the stakes on the west side of the car broke and those on the east side remained standing. The piling rolled inflicting injuries on the plaintiff. There was evidence that the crew's foreman who had observed the loose or broken wires called to plaintiff and his co-laborer to tell them what he had observed, but the plaintiff testified that he did not hear this warning. Plaintiff testified that he observed that there were only four stakes on each side of this car and that on all other cars similarly loaded which he had unloaded or observed there were from six to seven stakes on each side. He did not inspect the car with care and only observed one side of it. Plaintiff testified that he had had fourteen years of experience in handling and unloading poles and timbers. The facts will be further developed in the course of this opinion.

At the close of all the testimony on motion of all the defendants the court expressing the view that there was no proof of actionable negligence on the part of any of the defendants and that the plaintiff had not proven that he himself was free from negligence contributing to the accident resulting in his in-

juries directed a verdict in favor of all of the defendants.

From the judgment of dismissal based upon this verdict plaintiff prosecutes this appeal seeking reversal on substantially the following grounds: (1) The court erred in sustaining the defendants' motions for directed verdict; (2) The court erred in excluding evidence as to the usual, proper and customary method of unloading piling in the industry and community; (3) The court erred in excluding expert and opinion evidence as to the relative strength and stresses of wires and stakes.

Exhaustive arguments are contained in the briefs of counsel for the respective parties bearing on the question of the alleged negligence of the various defendants. While each defendant denies that it was guilty of any negligence which could be the basis for a recovery against it, we observe that there was one defense pleaded by all defendants which if sustained would render it unnecessary to consider the separate grounds of alleged negligence of the several defendants. The plea of contributory negligence and assumption of risk is common to all defendants and we shall therefore first consider that issue. As this is a diversity of citizenship case the substantive law of Iowa is applicable. In that state in a personal injury action it is incumbent on a plaintiff as a prerequisite to his right to recover to prove his freedom from contributory negligence. Kinney v. Larsen, 239 Iowa 494, 31 N.W.2d 635; Lemke v. Chicago, R. I. & P. R. Co., 8 Cir., 195 F.2d 989; Fisher v. Minneapolis & St. L. Ry. Co., 8 Cir., 199 F.2d 308. The question of negligence and contributory negligence is ordinarily one of fact to be decided by the jury. Where however, the undisputed evidence and the physical facts are such that all reasonable minds can reach but one conclusion, then the question becomes one of law to be determined by the court. Fisher v. Minneapolis & St. L. Ry. Co., supra. In the instant case it appears from the plaintiff's own testimony that before he went upon the load of slippery piling to cut the wires he observed that there were but four stakes on each side of the car, whereas on all other cars similarly loaded which he had observed there were from six to seven stakes. He was a man of wide experience; he knew the poles were slippery and that the weight between the stakes was heavy. He knew by experience that when the top wires are cut the stakes tend to spread and the load to sink from the top. He and his fellow workmen knew that the cutting of these wires was a hazardous undertaking. In his testimony he says, "When the top wires are cut the load is bound to spread a little as the top wires are pretty tight." He also testified, "I know that unloading poles of this character, large creosoted poles and pilings high on a car is dangerous work." His co-worker testified substantially the same as did the plaintiff. Notwithstanding the fact that plaintiff knew the hazards of his undertaking and appreciated the dangers incident thereto he took no precautions, in fact he did not inspect the car with any care. He did not brace the stakes on the side where he proposed to cut the wires and in fact took no precautions of any kind. It is argued that he was proceeding to unload this car in the manner customary to that locality, but he himself said that all prior loads had from six to seven stakes on each side of the car and that he noticed this before he began his work. If a customary method of doing work is unnecessarily dangerous, the fact that one follows such a dangerous custom is no defense. Iverson v. Vint, 243 Iowa 949, 54 N.W.2d 494; Jackson v. Chicago, M. St. P. & P. R. Co., 238 Iowa 1253, 30 N.W.2d 97. In Fisher v. Minneapolis & St. L. Ry. Co., supra [199 F.2d 312], which arose in Iowa we said:

"Although it is well settled in Iowa, as elsewhere, that the question whether or not an injured plaintiff has been guilty of contributory negligence is ordinarily a jury question, there must be a real question to justify submission to the jury.

In this case the evidence establishes that the action of the decedent in mounting upon the load of poles from which practically all support except the two bands on the top bundle had been cut and walking upon and standing upon the top of the precariously cohering load while he cut first one and then the last one of the retaining bands entailed great danger. Such danger was apparent. If a proper unloading method had been followed and proper tools used no such risk would have been involved in the unloading. Contributory negligence in the unloading was so plainly demonstrated that only one conclusion could be fairly drawn. It was attributable to the unloaders and not to either of the defendants who had nothing to do with the unloading. Whether the decedent himself was insufficiently informed by his employer of the danger or acted with understanding of the open and apparent danger of his action is irrelevant as to the defendants in this action."

Supporting the decision in Fisher v. Minneapolis & St. L. Ry. Co., supra, we cited Anderson v. Southern Ry. Co., 4 Cir., 20 F.2d 71; Southern Ry. Co. v. Edwards, 5 Cir., 44 F.2d 526; and Reed v. Missouri-Kansas-Texas R. Co., 362 Mo. 1, 239 S.W.2d 328. In the Anderson v. Southern Ry. Co. case, supra [20 F.2d 72], the facts were strikingly similar to those in the instant case. In that case the poles were held by eight stakes braced by wires running from one side of the car to the other, tying the stakes together. Each stake had two of these sets of wires, one at the middle of the load of poles and another near the top of the stakes across the top of the load. The court in holding the plaintiff guilty of contributory negligence as a matter of law among other things said:

"Preparatory to the unloading, deceased and one of the men under his direction went on top of the load and proceeded to cut the wires running between the stakes across the car. As the wires were cut, the load began to settle, and when the last wire was cut the standards broke on both sides of the car, and Thomas Anderson was thrown under some of the poles and so injured that he died.

"The claim of the plaintiffs is that the four stakes used for holding the load in place were neither sufficient in number nor sufficiently strong, and that they should have been of hardwood or steel; that the use of an insufficient number of stakes of an inferior quality constituted a defect, amounting to a defect in the car itself; that the car was improperly loaded, and that one of the stakes was mildewed and thereby weakened. * * *

"If there were an insufficient number of stakes, that fact was plainly to be seen by the deceased. He was warned by his coworker before the last wire was cut, and ordered it cut. No agent or employee of the defendant company was present at the time of the unloading. It was clearly the duty of the deceased, as foreman of the unloading crew, to see to it that the car was unloaded in a safe manner; a thing which could have undoubtedly been done in two or more ways. The stakes could have been braced from the ground on one side, so that the poles would only roll off on the side where the skids had been set for them to roll off, or the last wire could have been cut by some long-handled instrument. Even if it were impossible to unload the car safely, the deceased, as foreman, should not have permitted the unloading in a manner so hazardous and dangerous as was the course taken. A man has no right to be careless and reckless in the face of open and apparent danger, and if he proceeds under such circumstances he is guilty of contributory negligence to a degree that bars a recovery. The load was secure until

the deceased himself destroyed the security. In this case the evidence establishes contributory negligence so clearly as to admit of no other reasonable conclusion with regard thereto."

In Southern Ry. Co. v. Edwards, supra [44 F.2d 527], plaintiff was injured in attempting to unload poles. The method attempted was very similar to that attempted in the instant case. In holding the plaintiff guilty of contributory negligence the court among other things said:

"We are aware of no valid reason for holding that a carrier is under a duty to give notice or warning of a condition which is so visible that any danger therefrom must be apparent to and appreciated by a person of ordinary intelligence, prudence, and experience who undertakes the unloading of a car. * * * It is apparent from the evidence that the deceased realized that there was some danger to him in attempting the unloading in the way adopted. It seems that it may be inferred that that danger might have been avoided by putting suitable side supports in the cuffs which had been left vacant on the side on which poles were not intended to fall, by bracing the load on that side with a prop or props resting on the ground, or by breaking or cutting the wires by the use of some instrument operated at a safe distance from falling poles. But, whether there was or was not a practicable way of avoiding that danger, the deceased was negligent in incurring a danger which was open and apparent. That danger was brought into play by deceased's own voluntary act, done with full knowledge of the situation dealt with and that it involved peril."

In the instant case not only has the plaintiff failed to prove that he was free from negligence but his contributory negligence is established by overwhelming proof. We conclude that the court committed no error in finding the plaintiff guilty of contributory negligence as a matter of law and in directing a verdict for the defendants.

■■■ It is however urged that the court erred in rejecting certain evidence proffered as to the usual and customary method of unloading piling in the vicinity where this piling was being unloaded. We have already adverted to this contention. Negligence may not be excused by proof of usage or custom. As said by the Supreme Court of Iowa in Metzger v. Chicago, M. & St. P. Ry. Co., 76 Iowa 387, 41 N.W. 49, 50:

"A fault is none the less a fault because it is common."

We think too the general subject of inquiry was a matter of common knowledge rather than a subject for expert testimony, at least it was within the discretion of the court to hear or decline to hear expert testimony. 1 Wigmore on Evidence, Sec. 682, p. 1092; 32 C.J.S., Evidence, § 449; Delacy v. Mason City, 240 Iowa 951, 38 N.W.2d 587. There was no reversible error in sustaining the objection to this testimony. The other expert evidence offered referred to the charge of negligence in the loading of the poles but as plaintiff was guilty of such contributory negligence as precludes his right of recovery the question of the alleged negligence of the defendants becomes immaterial. The judgment appealed from is therefore affirmed.