559 P.2d 1082

SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY, Appellant,

v.

Harold T. REED and Lois Mary Reed,
his wife, Appellees.

No. 1 CA–CIV 2972.

Court of Appeals of Arizona,
Division 1,
Department A.

Dec. 16, 1976.

Rehearing Denied Jan. 13, 1977.

Review Denied Feb. 8, 1977.

Evans, Kitchel & Jenckes, P. C. by David
L. Beaugureau, Phoenix, for appellant.

Rosen & McGroder, Ltd. by Patrick J.
McGroder, III, Phoenix, for appellees.

OPINION

OGG, Judge.

In this appeal we must decide the duty a
railroad owes to an employee of a consignee
who is injured while working on a loaded
flatcar which is located on the consignee's
premises.

The plaintiff/appellee Harold T. Reed in-
stituted this action in the Superior Court of
Maricopa County against the defendant/ap-
pellant Southern Pacific Transportation
Company to recover damages for personal
injury allegedly sustained by Reed as the
proximate result of the negligence of
Southern Pacific. Trial of the case resulted
in a jury verdict in favor of Reed and
against Southern Pacific for the amount of
$30,000. Southern Pacific has appealed
from this judgment and from an order of
the trial court denying its motion for judg-
ment notwithstanding the verdict. A
second defendant, Reliance Truck Company,
was held to be not liable to Reed by the

jury under the same cause of action and is not a party to this appeal.

At the time of his injury Reed was employed as a field service mechanic on heavy equipment by Copper State Equipment Company. Copper State was the owner of a large "Payhauler" truck which had been sold to another party and which was to be shipped by rail. Copper State, in turn, hired Reliance Truck Company to load and secure the Payhauler on a railroad flatcar provided by Southern Pacific. Reliance Truck was to supply all labor and materials to accomplish the loading operations.

Reliance Truck was provided by Southern Pacific with a page from the Association of American Railroads' loading manual on procedures in loading a similar truck as an aid in the loading processes. Reliance Truck proceeded to load the truck on the railroad car and secure it, using wooden blocks at the wheels and eight tie-down cables at various points of the load, including cables at each corner. These cables were tightened by the use of a "twist bar" which consisted of two pieces of two inch pipe welded in a cross which was twisted through a loop made in the end of each cable in order to create tension in the cable and take up slack. The twist bar was then secured to the railroad car by nails driven into the wooden bed of the car and bent over the top of the bar to form an arch.

The load was inspected on several occasions by an inspector for Southern Pacific; he found the cables and twist bar mechanisms to be secure in his opinion and the load was eventually cleared for shipment.

Line clearance was not obtained for the car, however, since the load was found to be excessively wide. Yet prior to the resolution of line clearance the loaded car was removed from the Copper State spur by Southern Pacific and taken to its Phoenix railroad yard. The car was taken through several switching operations and eventually returned to Copper State for width modification on December 29, 1972.

Upon its return to the Copper State spur, the car was inspected by representatives of Copper State and Reliance Truck, at which time it was observed that the tie-down cables on the car were slack. Copper State directed Reed and a co-employee to perform the necessary width modifications on the Payhauler and with this purpose in mind Reed went to the loaded railroad car on January 4, 1973. Reed testified that he was familiar with cable tie-down on railroad cars using a twist bar and noticed that the cables on the car were slack. Reed reached up and touched one of the cables with his hand, at which time the twist bar spun on its axis and struck him in the face causing him severe injury.

■ In general, the scope of duty owed by a railroad to injured third parties is contingent upon several variables. Duty may be contingent upon the type of railroad car involved in the injury, see 29 A.L.R.3d 1039 (1970), upon the relationship between the injured party and the railroad, and also upon the instrumentality causing the injury. In this regard, we find the relevant duty of Southern Pacific should be founded upon the fact that a railroad flatcar was involved in the injury, that Reed's injuries were allegedly caused by a defect in the way the shipment was secured to the flatcar, and that Copper State was a consignee since it received shipment back from Southern Pacific after line clearance was refused.

■ Under this fact situation it is the general rule that a railroad owes a duty to a consignee or his employees having the task of unloading a flatcar to make a safe delivery of the car which includes the duty to correct or warn of patent defects or dangers in the shipment which are discoverable upon reasonable inspection by the railroad. *Southern Ry. v. Edwards*, 44 F.2d 526 (5th Cir. 1930); *Yandell v. National Fireproofing Corp.*, 239 N.C. 1, 79 S.E.2d 223 (1953); *Illinois Central R.R. v. Crawford*, 244 Miss. 300, 143 So.2d 427 (1962). However, this duty is discharged when the defect is equally apparent or observable by a person of ordinary intelligence and experience who undertakes the unloading of a railroad car as a consignee. *Southern Ry.*

v. *Edwards*, supra; *Illinois Central R.R. v. Crawford*, supra; *Reed v. Missouri–Kansas–Texas R.R.*, 362 Mo. 1, 239 S.W.2d 328 (1951).

The leading case dealing with the liability of a railroad for injuries suffered by a consignee in unloading a railroad flatcar is *Southern Ry. v. Edwards*, supra. In that case the deceased was killed when timber supports holding a load of telephone poles on a flatcar broke, causing the poles to fall upon the deceased. In discussing the relevant duty of the railroad to the deceased/consignee, the court acknowledged that in general a railroad owes a duty to inspect and warn those persons put in potential danger by a defective condition of the railroad car containing the shipment,[1] or by a defect in the way the shipment is secured. The court, however, held that this duty was discharged by the appreciation by the deceased of the danger inherent in the unloading of the car.

> We are aware of no valid reason for holding that a carrier is under a duty to give notice or warning of a condition which is so visible that any danger therefrom must be apparent to and appreciated by a person of ordinary intelligence, prudence, and experience who undertakes the unloading of a car. 44 F.2d at 527.

As a public policy consideration, any rule to the contrary could force great changes in the industry, including increased shipping costs. A railroad generally has no control over the unloading of a flatcar once the car is delivered to the consignee; to place liability on the railroad under the facts of this case could force the railroad to take charge of all loading and unloading in order to protect itself from negligence claims. See *Reed v. Missouri–Kansas–Texas R.R.*, supra.

■ On this authority, it is our opinion that in the present case the duty of Southern Pacific to warn of patent defects in the loaded flatcar shipment was discharged by the appreciation by Reed of the dangerous condition of the load. Reed testified at trial that he was familiar with the loading of heavy equipment on railroad flatcars in general, and cable tie-down and twist bar mechanisms specifically. He stated that he was aware of the inherent danger involved in the use of twist bars, and observed these same instrumentalities on the railroad car in question. Finally, Reed stated that immediately prior to his injury he observed that the tie-down cables were loose and in fact commented in that regard to his coemployee.

Under these factual circumstances, pursuant to the authorities previously discussed, we hold that as a matter of law the duty of the railroad to correct or warn of the allegedly dangerous condition of the railroad car was discharged by the awareness of Reed as an ordinary prudent person of the inherent danger in the instrumentality causing his injury. We therefore conclude that the jury verdict in favor of Reed cannot be sustained and that as a matter of law Southern Pacific's motion for judgment notwithstanding the verdict should have been granted.

The judgment is reversed and the court is directed to enter judgment notwithstanding the verdict in favor of Southern Pacific Transportation Company.

DONOFRIO, P. J., and NELSON, J., concur.

---

1. In the case at bar there were no allegations made nor evidence presented that there were any defects in the flatcar furnished by Southern Pacific.